UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

**FILED**

IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ MAY 0 4 2005 ★

BROOKLYN OFFICE

UNITED STATES OF AMERICA,

    – against –

HUMBERTO PEPIN,

            Defendant.

MEMORANDUM & ORDER
04-CR-156

---------------------------------------------------------X

JACK B. WEINSTEIN, Senior District Judge:

## I. Introduction

The defendant, charged with a capital offense, moves to strike the government's Notice of

Intent to Seek the Death Penalty ("death notice"). The death notice is a formal advisement of the

government's intent to seek the defendant's execution in the event of conviction. It specifies the

aggravating factors it will seek to prove. *See* 21 U.S.C. § 848(h)(1)(B). It is the defendant's

contention that the government delayed in filing the death notice, in violation of the provision of

the statute mandating service "a reasonable time before trial," 21 U.S.C. § 848(h)(1), thus

negating any right to seek capital punishment. There is no merit to this contention. The decision

in *United States v. Ferebe*, 332 F.3d 722 (4th Cir. 2003) (vacating judgment of district court

denying defendant's motion to strike death notice and remanding to the district court for further

findings as to time remaining between death notice's filing and trial), upon which defendant

relies, should not be followed in this circuit under circumstances such as are presented in the

instant case.

## II. Facts

The defendant was indicted for the first time on February 20, 2004. He was charged with



one homicide. *See* 21 U.S.C. § 848(e)(1)(A); 18 U.S.C. §§ 3551 *et seq.* The indictment also contained an obstruction of justice count, for allegedly tampering with a witness. *See* 18 U.S.C. § 1512(a)(2)(C); 18 U.S.C. §§ 3551 *et seq.*

From the beginning of this prosecution, the government announced its intention to seek death penalty authorization from the Attorney General. In response to the potential for capital punishment the court appointed second counsel on March 30, 2004. *See* 21 U.S.C. § 848. At defense request, on May 19, 2004 the court appointed a mitigation specialist.

The government filed a first superseding indictment on June 18, 2004. It charged that while engaged in a conspiracy to distribute five kilograms or more of cocaine and one kilogram or more of heroin, the defendant committed the originally charged murder and that he also committed a second murder.

On July 12, 2004, the defendant was arraigned on the first superseding indictment. At that time the court set a September 7, 2004 control date for trial. In August 2004, the parties notified the court that they were not prepared to go forward with the scheduled trial. Instead, a status conference was held on September 8, 2004.

Counsel for the defendant made a presentation to the Attorney General's Capital Committee in writing and then in person on October 18, 2004. On December 17, 2004, the government announced that the Department of Justice approved of, and would seek, a sentence of death. That same day, December 17, 2004, the court set a trial date for June 27, 2005.

On January 14, 2005, the government filed a second superseding indictment. It included the same charges as the first superseding indictment, but added a section not included in the first superseding indictment, labeled "Notice of Special Findings," which included special findings of

2

statutory aggravating factors. On March 3, 2005, the government filed its death notice for the second superseding indictment.

At an April 28, 2005 hearing on the present motion to strike the death notice, the defense indicated that it could not meet the previously scheduled June 27, 2005 trial date and asked for a trial date in the summer of 2006. The case was then set for trial on December 12, 2005, with the consent of the parties.

## III. Law

### A. Section 848(h)(1)

Pursuant to section 848(h)(1) of Title 21 of the United States Code, the defendant moves to strike the death notice, relying on the requirement that the government must file the notice "a reasonable time before trial." Section 848(h)(1) provides:

> (1) Whenever the Government intends to seek the death penalty for an offense under this section for which one of the sentences provided is death, the attorney for the Government, *a reasonable time before trial or acceptance by the court of a plea of guilty*, shall sign and file with the court, and serve upon the defendant, a notice –
> (A) that the Government in the event of conviction will seek the sentence of death; and
> (B) setting forth the aggravating factors enumerated in subsection (n) of this section and any other aggravating factors which the Government will seek to prove as the basis for the death penalty.

21 U.S.C. 848(h)(1) (emphasis added). Reasonable time is undefined.

### B. Caselaw

*United States v. Ferebe*, 332 F.3d 722 (4th Cir. 2003), is cited in support of the defendant's motion to strike the death notice. While *Ferebe* did not address section 848(h)(1), it

3

analyzed a companion statute that employs identical language regarding the service of notice a reasonable time before trial. *See* 18 U.S.C. 3593(a). According to the majority in *Ferebe*, the right to a timely death notice requires:

> *as a prophylactic, reasonable notice before trial.* And its indisputable purpose is to ensure that the accused will not be required to stand trial for his life without having received adequate notice before that trial that he *is* to stand trial for [a] capital offense (in addition to ensuring that an accused will not receive the death penalty without having received such notice). That Congress intended to protect the accused from having to endure a capital trial for which he was provided inadequate notice to prepare his defense is plain from the fact that it required the Death Notice be given a "reasonable time" before the trial, not merely "before" trial.

*Id.* at 727 (emphasis altered from original).

In *Ferebe*, the United States Court of Appeals for the Fourth Circuit observed that "one of the chief aims of [the notice provision] is to protect the accused from having to endure a trial for his life for which he was not on reasonable notice," and that, as a result, the statute must be interpreted to require an inquiry into the "objective reasonableness of the time between issuance of the Death Notice and the trial itself. . . ." *Id.* The inquiry into objective reasonableness, according to the *Ferebe* majority, must be conducted "in light of the particulars of the charged offense and the anticipated nature of the defense." *Id.* The timeliness of the provided notice "must be determined pre-trial and objectively." *Id.* at 728. *Ferebe* proposes that to judge an accused's challenge to the reasonable timeliness of a death notice requires evaluation of, among other factors that may appear relevant,

> (1) the nature of the charges presented in the indictment; (2) the nature of the aggravating factors provided in the Death Notice; (3) the period of time remaining before trial, *measured at the instant the Death Notice was filed and irrespective of the filing's effects*;

4

and, in addition[;] (4) the status of discovery in the proceedings.

*Id.* at 737 (emphasis added). In *Ferebe*, the Court of Appeals ultimately concluded that timeliness could not be determined where the record did not indicate the time remaining between the death notice's filing and trial. It vacated the district court's denial of defendant's motion to strike the death notice and remanded for further findings.

The unusual and potentially inequitable pre-trial chronology in *Ferebe* may well have justified the emphasis on the timing of the death notice. Ferebe was first indicted on federal drug, gun, and murder charges, along with a co-defendant, stemming from the shooting deaths of two individuals. The prosecution sought authorization from the United States Attorney General to seek the death penalty for both charged murders. The Department of Justice authorized the death penalty for only one of the two murders, and only against Ferebe.

Five months before his trial was set to begin, the prosecution requested that the Attorney General reconsider the decision not to authorize the death penalty on Ferebe's second murder charge. Before the Attorney General responded, counsel for the defendant contacted the prosecution and informed it that Ferebe wished to enter a guilty plea, in exchange for concurrent life sentences. The prosecution agreed to the terms and entered into an agreement with the defendant. The plea agreement, however, was conditioned on approval by the Attorney General.

Pending formal approval of the plea agreement, two months before trial was set to begin the Attorney General authorized the death penalty against Ferebe for the second murder, as well as for the first. Twenty days passed after authorization of the death penalty prosecution as to the second murder before the Attorney General responded to the request for approval of the conditional plea agreement. A month and a half before Ferebe's scheduled capital trial, he was

5

informed that the conditionally entered plea agreement would not be accepted. Just over a month before trial was set to begin, the court, the prosecution and the defense attorney met for a conference to discuss the case and the rejection of the plea agreement. Defense counsel indicated that the defendant would nevertheless plead guilty to the charges, in the absence of a plea agreement, because, without a filed death notice, he faced a maximum penalty of life imprisonment. The next day, before the defendant had an opportunity to plead guilty, the prosecution filed its death notice for both of the murders. The defendant at that point filed his motion to strike the death notice.

The court in *Ferebe* held that the district court's reliance on a prejudice inquiry to vindicate the right created by a death notice statute incorrectly substituted a post-trial harmless error inquiry for the appropriate pre-trial objective reasonableness inquiry. 332 F.3d at 732. *But see United States v. Acosta Martinez*, 89 F. Supp. 2d 173, 178 (D.P.R. 2000) (noting that the purpose of statutory time constraints on the filing of a death notice is to "avoid *prejudice* upon a death eligible defendant because of the government's delay in announcing its intention to seek the death penalty.") (emphasis added). The court further concluded that in order to properly analyze a motion to strike a death notice for violation of the statutory timeliness requirement, a court "must clearly address . . . the period of time that remains before trial, as of the moment of the Death Notice's filing, and irrespective of that filing." *Ferebe*, 332 F.3d at 738. The trial date, under this reading of *Ferebe*, may not be "voided *in order to accommodate* the capital trial" in response to a motion to strike the death notice as untimely. *Id.* at 739 (emphasis in original). *See also United States v. Hatten*, 276 F. Supp. 2d 574, 579 (S.D. W. Va. 2003) ("[T]he Court must look at the trial date that was in existence at the time of [the] filing, even though the

issuance of the Death Notice may affect the viability of the trial date."). *But see United States v. Ponder*, 347 F. Supp. 2d 256, 267 (E.D. Va. 2004) ("Courts are not restricted to merely counting days between a Death Notice and the scheduled trial date if the court knows, and the parties are reasonably aware, that the matter is not actually proceeding to trial on that date.").

This court need not rule on the soundness of *Ferebe*'s determination that a pre-trial objective reasonableness analysis should be applied in lieu of a determination of post-trial prejudice. Unpersuasive is *Ferebe*'s suggestion that a court may not effectively address the concerns raised by a motion to strike a death notice as untimely by postponing the trial. *See Ferebe*, 332 F.3d at 738 ("The court's comments . . . do not establish that the trial start date was cancelled *in advance of the Death Notice's filing and irrespective of it*.") (emphasis in original). *Cf. id.* at 741 (Niemeyer, J., dissenting) ("[The majority] reads the statute to require a death penalty notice to be given a reasonable time before the *date of trial* . . . not before the *trial*, as the statute provides.") (emphasis in original).

## IV.  Application of Law to Facts

Though the June 27, 2005 trial date was in effect at the time the government filed its death notice for the second superseding indictment on March 3, 2005, the court had made it plain that it would provide the parties with as much time as necessary for pre-trial preparation in this capital case.

The filing of a motion to strike the death notice as untimely is an obvious indication that the defendant needs more time to prepare for trial. The course of action taken by the parties established that a June 27, 2005 trial date was impracticable. Significantly, the defendant has not even begun to file pre-trial motions. He also has not formally sought the *Brady* material which

the government has indicated is in its possession. Defendant's contention that a postponement of the trial will be insufficient to guarantee him reasonable notice under section 848(h)(1) has no basis in fact.

In the instant case there has been no indication that the government delayed the filing of its death notice in order to prejudice defendant. Any delays were due to the importance of full consideration of this vital matter here and in Washington. There is no suggestion of bad faith.

## V. Conclusion

The June 27, 2005 trial date originally set by the court was subject to the changing needs of the parties. The parties were at all times aware that this matter would not proceed to trial unless both parties were fully prepared to go forward.

The motion to strike the government's notice of intention to seek the death penalty is denied.

SO ORDERED.

s/Jack B. Weinstein
Jack B. Weinstein
Senior District Judge

Dated: April 29, 2005
      Brooklyn, N.Y.