FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ FEB 28 2006 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA | No. 04-CR-156 (JBW) |
| v. | MEMORANDUM & ORDER ON MENTAL HEALTH EVIDENCE |
| HUMBERTO PEPIN TAVERAS, | |
| Defendant. | |

JACK B. WEINSTEIN, Senior District Judge:

In this capital prosecution, the government has moved for an order requiring defendant to undergo a mental health examination by a government expert. The motion is denied with leave to renew.

I. Facts

On October 31, 2005 the government moved pursuant to Federal Rule of Criminal Procedure 12.2 for an order 1) directing defendant to give notice of his intent to plead insanity or introduce expert evidence as to any mental condition at his trial or sentencing, and 2) should he give such notice, to submit to examination by mental health experts retained by the prosecution. *See* Gov't Mot. 1. The court directed defendant to serve the requested notice by February 1, 2006. *See* Order of December 1, 2005, at 1.

Defendant served timely notice of his intent to introduce expert testimony about his mental condition on the issue of punishment—but not guilt. *See* Def.'s Notice 1. He has disavowed any insanity defense requiring notice under Rule 12.2(a). *See* Order of Dec. 1, 2005,

1



at 1.

No party has moved for examination of defendant to determine whether he is competent to stand trial. There is no "reasonable cause" for the court to order such a hearing sua sponte. *See supra* Fed. R. Crim. P. 12.2(c)(1)(A); 18 U.S.C. § 4241 (governing determinations of competency to stand trial).

## II. Law

Rule 12.2 describes a defendant's obligation to provide notice of an insanity defense, Fed. R. Crim. P. 12.2(a), or expert evidence on mental health issues, Fed. R. Crim. P. 12.2(b), and provides for examination of the defendant by a government expert in certain circumstances. Fed. R. Crim. P. 12.2(c). This Rule is supplemented by statutory provisions. *See* 18 U.S.C. § 4242 (describing procedures for mental examinations ordered pursuant to Rule 12.2).

The court's authority to order a mental examination of a defendant is defined in Rule 12.2(c)(1). The Rule provides:

> (A) The court may order the defendant to submit to a competency examination under 18 U.S.C. § 4241.
>
> (B) *If the defendant provides notice under Rule 12.2(a), the court must,* upon the government's motion, *order* the defendant to be examined under 18 U.S.C. § 4242. *If the defendant provides notice under Rule 12.2(b) the court may,* upon the government's motion, *order* the defendant to be examined under procedures ordered by the court.

Fed. R. Crim. P. 12.2(c)(1) (emphasis supplied).

As indicated by the italicized language, if a defendant intends to assert an insanity defense, examination is mandatory; if he plans to offer expert evidence on guilt, or on

2

punishment in a capital case, it is discretionary. Defendant's notice in the instant prosecution triggers the second, discretionary aspect of the Rule.

The timing of any notices and discovery under Rule 12.2 is within the discretion of the court. *See* Fed. R. Crim. P. 12.2(a) (notice to be served "within the time provided for filing a pretrial motion, or at any later time the court sets"), Fed. R. Crim. P. 12.2(b) (same); *see also* Fed. R. Crim. P. 12.2 advisory committee note (2002) ("Except as provided by in Rule 12.2(e)(3), the rule does not address the time for disclosing results and reports of any expert examination conducted by the defendant.").

A district court retains inherent power to order discovery as it deems necessary to manage the case so long as its dictates do not violate the defendant's Fifth and Sixth Amendment Rights or other federal law. *See* Fed. R. Crim. P. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district.").

## II. Legal and Practical Considerations

### A. Constitutional Concerns

Ordering a defendant to undergo examination by a government expert before trial implicates his Fifth Amendment right against self-incrimination and Sixth Amendment right to assistance of counsel. *See Estelle v. Smith*, 451 U.S. 454, 101 S. Ct. 1866 (1981). Any information from the examination that is leaked, even inadvertently, to the prosecuting attorneys, might compromise the defense and constitute compelled testimony. *Id.* An appropriate psychiatric examination might require exclusion of defense counsel.

Fifth and Sixth Amendment protections extend to the sentencing phase of a capital trial. *See id.*, 451 U.S. at 468 ("A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding."); *United States v. Wade*, 388 U.S. 218, 226, 87 S. Ct. 1926, 1932 (1967) ("It is central to [the Sixth Amendment] principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." (footnote omitted)).

These rights are not impervious. A defendant may waive the Fifth Amendment privilege against self-incrimination by presenting, in his defense, expert evidence based on interviews with him. In order to ensure the government's right to a fair trial, the prosecution is entitled to rebut any such evidence with expert evidence of its own, *Buchanan v. Kentucky*, 483 U.S. 402, 422-3, 107 S. Ct. 2906, 2917-8 (1987), including examination by a government expert. Fed. R. Crim. P. 12.2(c)(1)(B); *see also Powell v. Texas*, 492 U.S. 680, 684, 109 S. Ct. 3146, 3149 (1989) (noting that *Estelle* and *Buchanan* provide "some support" for argument that defense use of expert testimony based on interviews with defendant "might constitute a waiver" of the right against self-incrimination). This encroachment on a defendant's Fifth Amendment right does not affect his Sixth Amendment rights. *Powell*, 492 U.S. at 685.

## B. Practical Concerns

Pre-trial examination of defendant would greatly complicate these proceedings. It has already occasioned significant controversy in the instant matter. Contested have been: the timing of defendant's Rule 12.2(b) notice; defendant's obligation to provide the names, fields of expertise and curricula vitae of his experts; defendant's obligation to provide notice of the tests to be administered to him by his own experts; government discovery of defense expert opinions, diagnoses, and bases for their opinions; disclosure of defense expert reliance materials and defendant's contentions as to nature and onset of any mental condition; the timing of release of defendant's expert reports, including those not based on examinations of defendant; discovery of defense lay witnesses as to defendant's mental condition; the government's right to examine defendant; prior notice to defendant of tests to be administered by the government; limitations on government examination; defendant's right to counsel at any government examination; audio or video-recording of the examinations; appropriate procedures for preventing early disclosure of government expert reports to the prosecuting attorneys; the timing of government disclosure of its expert reports to defendant; the timing of any *Daubert* challenges to admissibility of particular tests; defense discovery of government expert qualifications; disclosure of the government's factual allegations to defense experts; discovery of government expert reliance materials; preservation of government notes of examinations; and government notice of evidence to be presented at sentencing. *See* Gov't Mot. of Oct. 21, 2005; Transcript of Nov. 10, 2005; Def.'s Letter of Nov. 22, 2005; Gov't Letter of Nov. 22, 2005; Transcript of Dec. 1, 2005 Hearing; Order of Dec. 1, 2005; Def.'s Resp. of Jan. 26, 2006; Transcript of Feb. 2, 2006 Hearing; Order of Feb. 3, 2006; Def. Letter of Feb. 13, 2006; Gov't Reply of Feb. 14, 2006; Transcript of Feb.

15, 2006 Hearing.

Both defendant and the government have proposed procedures to reduce the threat to defendant's constitutional protections. *See* Def.'s Resp. 12-23; Gov't Reply 7-10. Central to the parties' suggestions is the utilization of a "taint team"—a separate group of government attorneys who would be responsible for litigating any issues that may arise concerning the government examination of defendant, but who would not communicate what they learned to the prosecutors. Taint teams have been utilized in other cases. *See, e.g., United States v. Sampson*, 335 F. Supp. 2d 166 (D. Mass. 2004). Though they may provide some protection to defendant, they will further complicate issues during preparation for trial—for example, whether they should be from a different prosecutor's office, how charges of leakage should be resolved, and how they should be supervised by the court.

## III. Federal Practice

Rule 12.2 was amended in 2002 to broaden the notice to which the government is entitled and clarify the court's authority to order a government examination of a defendant who plans to offer mental health evidence in a capital sentencing proceeding. *See* Fed. R. Crim. P. 12.2 advisory committee note (2002). Reported cases applying Rule 12.2(c)(1)(B)'s new discretionary provision are few. In every instance, upon the government's request, the court has ordered the defendant to undergo examination *before trial*. This practice is understandable in those cases where the defendant intended to offer mental health evidence to defend against a finding of guilt. *See United States. v. Bueno*, Criminal No. 04-40023-FDS, 2006 WL 240060, at *9 (D. Mass. Jan. 5, 2006) (defendant accused of transporting illegal aliens argued that he had

lacked requisite mental state to be convicted under statute requiring "knowing or reckless disregard of" alien's undocumented status); *United States v. Visinaiz*, 96 Fed. Appx. 594, 595-6 (10th Cir. 2004) (in capital prosecution, defendant planned to plead self-defense at trial based on his state of mind at the time of victim's death, with reference to his "medical diagnoses for agoraphobia, panic disorder and alcohol abuse"); *United States v. Harding*, 219 F.R.D. 62, 63 (S.D.N.Y. 2003) (defendant accused of fraud planned to contest his capacity to form the specific intent required to defraud the victim organization). The examination must take place before trial—or at least in its early stages—or it cannot be considered by the trier.

Less defensible is the *uniform* practice of ordering pretrial examination in capital prosecutions where the defendant intends to offer expert mental health evidence only in mitigation at sentencing. *See United States v. Fell*, 372 F. Supp. 2d 753, 761 (D. Vt. 2005); *United States v. Johnson*, 362 F. Supp. 2d 1043, 1082 (N.D. Iowa 2005); *United States v. Sampson*, 335 F. Supp. 2d at 242; *United States v. Taylor*, 320 F. Supp. 2d 790, 791 (N.D. Ind. 2004). *See also United States v. Minerd*, 197 F. Supp. 2d 272, 275 (W.D. Pa. 2002) (in a case decided before amendment of the Rule, taking the same approach to timing of mental examination); *United States v. Allen*, 247 F.3d 741, 775 (8th Cir. 2001) (same) (affirming district court order), *cert. denied sub nom. Holder v. United States*, 539 U.S. 916, 123 S. Ct. 2273 (2003); *United States v. Edelin*, 134 F. Supp. 2d 45, 49 (D.D.C. 2001) (same); *United States v. Lee*, 89 F. Supp. 2d 1017, 1019 (E.D. Ark. 2000) (same), *rev'd on other grounds*, 274 F.3d 485 (8th Cir. 2001); *United States v. Hall*, 152 F.3d 381, 398 (5th Cir. 1998) (same) (affirming district court order), *cert. denied*, 526 U.S. 1117, 119 S. Ct. 1767 (1999), *abrogated on other grounds, United States v. Martinez-Salazar*, 528 U.S. 304, 120 S. Ct. 774 (2000); *United States*

*v. Beckford*, 962 Fed. Supp. 748, 762-3 (E.D. Va. 1997) (same); *United States v. Haworth*, 942 F. Supp. 1406, 1409 (D.N.M. 1996) (same); *United States v. Vest*, 905 F. Supp. 651, 654 (W.D. Mo. 1995) (same). This granting of motions for pretrial examination appears to be based on unwarranted comparisons to non-discretionary examination under the Rules pursuant to an insanity defense.

Courts have had the explicit authority to order examination of a defendant upon notice of his intent to rely on an insanity defense since 1975, when Rule 12.2 was adopted. *See* Fed. R. Crim. P. 12.2 advisory committee notes (1975 enactment) ("Rule 12.2 is a new rule that deals with defense based upon mental condition."). It was common practice in the states by the middle of the last century. *See* Fed. R. Crim. P. 12.2 advisory committee notes (noting that "[t]his is a common provision of state law, the constitutionality of which has been sustained" and citing a tentative Model Penal Code draft from 1955); *see also United States v. Baird*, 414 F.2d 700, 710 (2d Cir. 1969) ("[T]he authority to permit the Government to examine the accused under the circumstances in the case at bar [i.e., where the defendant has asserted an insanity defense] stems from the inherent power of the courts" and "the responsibility to supervise the administration of criminal justice in order to ensure fundamental fairness."). As already noted, such an examination is now mandatory upon a government motion. Fed. R. Crim. P. 12.2(c)(1)(B).

Insanity negates guilt, preventing sentencing on any criminal charge. "It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17. *See Shannon v. United States*, 512 U.S. 573, 582, 114 S. Ct. 2419, 2425 (1994) (describing this as the

"test for insanity"). If the government is to be given the opportunity to effectively rebut the defendant's contentions, any proof regarding insanity must necessarily be made available to it—by discovery of defense experts' reports or the opportunity to examine defendant—before trial.

The same rationale exists for allegations of any other mental condition that would constitute evidence at the guilt phase of a trial. *See, e.g., Buchanan v. Kentucky*, 483 U.S. 402, 107 S. Ct. 2906 (1987) (in state prosecution, defendant asserted defense of extreme emotional disturbance). The government's right to rebut defendant's evidence—whatever the form it takes—must include the opportunity to obtain pertinent information before trial. *But cf.* Fed. R. Crim. P. 12.2 advisory committee notes (noting that "issue[s] of self-incrimination . . . might arise," but opining that they "can be dealt with by the court as, for example, by a bifurcated trial which deals separately with the issues of guilt and of mental responsibility."). When a defendant raises his mental condition as a defense to liability in a non-bifurcated trial of the guilt issue, "fundamental fairness" to the government can be satisfied only by providing it with the proof it needs before trial begins.

The timing of the examination raises a different problem when it is applied to the sentencing phase. In capital cases, the government is entitled, in the interests of "fundamental fairness," to pertinent proof of defendant's expert mitigation evidence—either by examination of the defendant or discovery of his expert evidence—before it is needed. It is not needed until defendant has been found guilty of a capital crime.

Defendant in the instant matter has protected his right to introduce expert evidence of his mental condition as a mitigating factor at sentencing, but not during the guilt phase. *See* Def.

9

Not. 1. Rule 12.2 properly distinguishes between these two phases of the criminal proceedings. *See* Fed. R. Crim. P. 12.2(b) (requiring notice if "defendant intends to introduce expert evidence . . . bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case"). If the court orders the defendant to be examined by a government expert before trial, the government is prohibited from learning the results of the examination until after the defendant is found guilty of a capital charge and the defendant confirms his intent to offer expert mental health evidence at sentencing. Fed. R. Crim. P. 12.2(c)(2). Neither statements made during the government examinations, nor testimony of the expert based on such statements, nor "other fruits of the statement" may be admitted against the defendant unless he presents his own expert evidence first. Fed. R. Crim. P. 12.2(c)(4). Leakage of information from a government expert to the prosecuting attorneys during the course of trial of guilt—or the allegation that this has occurred—might require a hearing and could provide a ground for appeal or a petition for habeas corpus. This risk can be avoided by postponing the government's examination to the period after a finding of guilt, but before the penalty phase begins.

## IV. Application of Legal and Practical Considerations to Facts

Defendant has conceded that it is appropriate for the government to examine him. Constitutional and practical considerations suggest that the examination should not occur unless a guilty verdict is returned by the jury.

Disputes over the scope of mental health discovery have already occupied a great deal of the parties' and the court's time. *See supra* II.B. Though important, they are logically posterior to the more immediate task of adjudicating defendant's guilt.

10

Though pretrial self-incrimination problems can be minimized by "taint teams," the chance of leakage of information—or at least the contention to that effect—remains substantial. It should be avoided.

Examination by a government expert *after* a verdict of guilt, if any, would diminish the threat to defendant's constitutional protections. *See Williams v. New York*, 337 U.S. 241, 251, 69 S. Ct. 1079, 1085 (1949) (no constitutional limitation on information considered during sentencing: "The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure."); *contra* John G. Douglass, Confronting Death: Sixth Amendment Rights at Capital Sentencing, 105 Colum. L. Rev. 1967, 1972 (2005) (arguing that "the whole of the Sixth Amendment applies to the whole of a capital case, whether the issue is guilt, death eligibility, or the final selection of who lives and who dies"). It would also obviate the need for the unwieldy taint team procedures proposed by the parties.

Postponing examination of the defendant until after a possible guilty verdict will create little delay between the verdict and the pronouncement of sentence. *But see United States v. Beckford*, 962 Fed. Supp. 748, 762-3 (E.D. Va. 1997) (expressing concern about such delay). The *Beckford* court ordered government examination of the defendant before trial in part to avoid delay between the two phases of the trial. It expressed fear that the "content and context" of evidence presented during trial, and relied upon again at sentencing, would fade from jurors' minds; that the "relative roles played" by the multiple defendants in that case would be difficult to recall; that a juror would be more likely to fall ill, die or become unavailable in the interim; and that it would be more difficult to secure jurors in the first instance if the trial were to be lengthy. *Id.* at 762-3.

11

None of these concerns of the *Beckford* court provides a satisfying reason to order pre-trial examination in the instant prosecution. The evidence of guilt in this case will not be complex; the court has already heard much of it in the course of motion practice.

In light of the nature of the evidence; defendant's purported commercial drug-related reasons for killing the victims; the nature of the homicides by close range shooting and blunt object; the disposition of the bodies by cutting them up and dumping them in garbage bags; and other factors, it is probable that the experts for both defendant and the government will consider the evidence at trial, as well as that gathered from direct testing and conferences with the defendant, before issuing their final reports. Viewing portions of the trial in person will be more effective than relying solely on a cold record. Should there be a guilty verdict, defendant's mental health experts can—on the basis of fairly standardized material that they can begin assembling now—prepare their expert reports promptly. The court can then hold necessary *Daubert* hearings and sentencing can proceed expeditiously.

Since defendant may withdraw notice of his intent to introduce expert mental health evidence, *see* Fed. R. Crim. P. 12.2(c)(2), the evidence at trial may suggest that an appropriate defense strategy is to avoid all these issues by not introducing expert testimony on the mental condition of defendant. Defendant's right to not testify and to not reveal aspects of his defense during the guilt phase of his trial would be fully protected. So too would be the government's right to be adequately informed of defendant's contentions and to prepare expert reports in rebuttal.

## VI. Conclusion

The government's motion is denied, with leave to renew should the jury return a verdict of guilt.

Defendant and the government have agreed to exchange the names and curricula vitae of their expert witnesses. For the present, this satisfies their obligations under Rule 12.2 and related provisions.

SO ORDERED.

Jack B. Weinstein

Dated: February 22, 2006
Brooklyn, New York