FILED

IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ MAR 0 8 2006 ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| HUMBERTO PEPIN TAVERAS, | ) |
| | ) |
| **Defendant.** | ) |

No. 04-CR-156 (JBW)

MEMORANDUM & ORDER
ON CHALLENGES TO DEATH
PENALTY

Appearances:

For United States of America:
    Roslynn Mauskopf
    United States Attorney
    Brooklyn, New York
    By:    Morris Fodeman
           Lee Freedman

For Defendant:
    Freeman, Nooter & Ginsberg        Lewis & Fiore
    New York, New York                New York, New York
    By:    Louis Freeman           By:    David Lewis

TABLE OF CONTENTS

                                                                Page

I.     Violation of the Commerce Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    Relaxed Evidentiary Standards at the Penalty Phase
       Permitting Unreliable Findings are Unconstitutional . . . . . . . . . . . . . . . . . . . . . . 4

III.   Violation of the Eighth Amendment Because Mitigating
       Circumstances Lessening Culpability May Not be Taken
       Into Account by the Jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.   Unconstitutional Grant of Jury Power to Sentence



Even if the Defendant Prefers to Waive a Jury ............................ 8

V.     No Meaningful Appellate Review ....................................... 9

VI.    Death Penalty is Cruel and Unusual .................................... 10

VII.   Unconstitutional Broadening of Criminal Behavior ........................ 10

VIII.   No Execution Method ................................................ 11

IX.    Lethal Injection is Cruel and Unusual ................................... 11

X.     Sentence of Death in New York Violates the
Tenth Amendment ..................................................... 12

XI.    Homicides Charged are Not "During the Course of"
a Continuing Criminal Enterprise ....................................... 12

XII.   Some of the Aggravators Must be Stricken ............................... 13

XIII.   Jury May Not be Permitted to Consider More
Than One Statutory Aggravating Factor .................................. 14

XIV.   Use of Non-statutory Aggravating Factors Violates
Separation of Powers and Other Constitutional Provisions ................... 15

XV.    Proportionality Review is Required ..................................... 18

XVI.   Photographs, Crime Scene Plats and Other Evidence
May Not be Used ...................................................... 20

XVII.   Residual Doubt Must Be Considered at the Capital
Phase ............................................................... 22

XVIII. Death Penalty is Limited to United States Citizens ........................ 23

XIX.   Improbability of Clemency Makes a Death Penalty
Unconstitutional ...................................................... 23

XX.    Bifurcation of the Penalty Phase Required ............................... 24

XXI.   Victims Consented to Their Murder .................................... 25

XXII.  Lack of Venue in the District ......................................... 26

XXIII. List of Witnesses and Venirepersons Must be Supplied ..................... 28

XXIV. Conclusion ......................................................... 28

JACK B. WEINSTEIN, Senior District Judge:

Defendant is accused of killing two of his partners during the course of their wholesale illegal narcotics business, cutting up the bodies, placing the parts in plastic garbage bags, and dumping them. 21 U.S.C. § 848(a). He challenges the death penalty aspects of his prosecution on a number of grounds described below; few have any merit. All are now rejected. They may be reasserted should defendant be found guilty, requiring a death penalty trial phase.

## I. VIOLATION OF THE COMMERCE CLAUSE

Defendant contends that prosecution of murder under the Controlled Substance Act, Section 848(a) of Title 21 of the United States Code (CSA) is not supportable under the Commerce Clause. The court takes judicial notice that the illegal drugs which defendant is accused of trafficking in cross state and international boundaries. Ruling Second Circuit caselaw has rejected this challenge to the CSA. *See United States v. Walker*, 142 F.3d 103, 111 (2d Cir. 1998).

This contention has no merit.

## II. Relaxed Evidentiary Standards at the Penalty Phase Permitting Unreliable Findings are Unconstitutional

Defendant argues that loose evidentiary standards at the penalty phase permit unconstitutionally questionable findings.

The Federal Death Penalty Statutes provide that relevant sentencing "information" is admissible at the penalty phase of a federal capital trial "regardless of its admissibility under the rules governing the admission of evidence at criminal trials." 18 U.S.C. § 3593(c); 21 U.S.C. § 848(j). The Statutes neither authorize the admission of unconstitutional evidence nor prevent courts from excluding such evidence.

In *Williams v. New York*, 337 U.S. 241, 69 S. Ct. 1079 (1949), a capital case, the Supreme Court recognized that there were "sound practical reasons" for having "different evidentiary rules govern[] trial and sentencing procedures." *Id.* at 246. Once a jury has resolved the "narrow issue of guilt," the Court noted, "modern concepts [of] individualizing punishment" require that the trial judge select a sentence that is appropriate in kind and extent "to fit the offender and not merely the crime." *Id.* at 247. In the Court's view, it was "[h]ighly relevant—if not essential"—to that selection process that a judge possess "the fullest information possible concerning a defendant's life and characteristics" and "not be denied . . . pertinent information by . . . rigid adherence to restrictive rules of evidence properly applicable to the trial." *Id.* The Court "[did] not think" that the Constitution restricted sentencing judges to considering only "information received in open court," or that "[t]he due process clause should . . . be treated as a device for freezing the evidential procedure for sentencing in the mold of trial procedure." *Id.* at 251. Accordingly, the Court concluded that Williams' death sentence did not violate due process

4

merely because the trial judge had considered "material facts concerning [Williams' criminal] background which though relevant to the question of punishment could not have been brought to the attention of the jury in its consideration of the question of guilt." *Id.* at 244, 252.

In *Gregg v. Georgia*, 428 U.S. 153, 203-04, 96 S. Ct. 2909, 2939 (1976), the Supreme Court rejected a capital prisoner's attack on the "wide scope of evidence and argument allowed" by Georgia's capital sentencing statute. A plurality opinion stated:

> We think that the Georgia court wisely has chosen not to impose unnecessary restrictions on the evidence that can be offered at such hearings and to approve open and far-ranging argument. . . . So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it is desirable for the jury to have as much information before it as possible when it makes the sentencing decision.

*Id.* at 203-04 (joint opinion). Although the quoted passage was part of an opinion joined by only Justices Stevens, White, and Stewart, it has subsequently been cited or quoted with approval in numerous opinions for a majority of the Court. *See e.g., Romano v. Oklahoma*, 512 U.S 1, 7-8, 114 S. Ct. 2004, 2009 (1994); *Payne v. Tennessee*, 501 U.S. 808, 821, 111 S. Ct. 2597, 2606 (1991); *Zant v. Stephens*, 462 U.S. 862, 886, 103 S. Ct. 2733, 2747-48 (1983). *See also Schlup v. Delo*, 513 U.S. 298, 326 n. 44, 115 S. Ct. 851, 867 n. 44 (1995) (Supreme Court's decisions "permit reduced procedural protections at sentencing"); *Romano*, 512 U.S. at 7 (1994) (noting that the "traditional latitude" the States have to fashion capital sentencing statutes "extends to evidentiary rules at sentencing proceedings"); *id.* at 11-12 (rejecting the notion that the Eighth Amendment establishes "general evidentiary rules" that "govern the admissibility of evidence at capital sentencing proceedings"); *Barefoot v. Estelle*, 463 U.S. 880, 896-99, 103 S. Ct. 3383,

3396-98 (1983) (rejecting categorical rule that psychiatric testimony regarding future dangerousness is too unreliable to be admissible at a capital sentencing hearing; rather, "relevant, unprivileged evidence should be admitted and its weight left to the factfinder").

The rule protects the public and defendant. *See Green v. Georgia,* 442 U.S. 95, 97, 99 S. Ct. 2150, 2151 (1979) (exclusion of mitigating evidence under state hearsay rule violated due process); *Jurek v. Texas,* 428 U.S. 262, 271, 96 S. Ct. 2950, 2956 (1976) (joint opinion) ("A jury must be allowed to consider on the basis of all relevant evidence not only why a death sentence should be imposed, but also why it should not be imposed"); 428 U.S. at 276 ("What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine"). *See also United States v. Fell,* 360 F.3d 135 (2d Cir. 2004) (constitutionality of evidentiary standards at capital sentencing hearing).

This court under its inherent powers and Rule 403 of the Federal Rules of Evidence has power to protect the defendant against unreliable or unfairly prejudicial evidence. The right to appeal on the ground that the court did not exercise its discretion properly to protect the defendant can be utilized post-sentencing as a protective shield.

This contention has no merit.

### III. VIOLATION OF THE EIGHTH AMENDMENT BECAUSE MITIGATING CIRCUMSTANCES LESSENING CULPABILITY MAY NOT BE TAKEN INTO ACCOUNT BY THE JURY

Defendant argues as follows:

> Not all killings involve the degree of culpability which support a death sentence. By failing to limit the application of capital punishment only to the offense of unlawful murder, section 848 provides "no meaningful basis for distinguishing the few cases

> in which [the death penalty] is imposed from the many cases in which it is not." *Furman v. Georgia,* 408 U.S. 238, 313 (1972) (White, J., concurring).
>
> Section 848 cross-references § 841 (b)(1)(A) for certain explanatory purposes. Notably absent is any reference to federal murder statutes, 18 U.S.C. § 1111. By not incorporating this substantive definition, it is clear that the "intentional killing" language of § 848 is to reach conduct more sweeping than the narrow description of 18 U.S.C. § 1111.
>
> By subjecting to a potential death sentence all persons who commit intentional killings regardless of circumstances which might mitigate or lessen culpability, § 838(e)(1)(A) violates the Eighth Amendment.

Memorandum of Defendant dated September 14, 2005, at 46-47 ("Def.'s Mem.").

Congress has defined the capital offense broadly providing "for narrowing by jury findings of aggravating circumstances at the penalty phase." *Lowenfeld v. Phelps,* 484 U.S. 231, 246, 108 S. Ct. 546, 555 (1988). In *Tuilaepa v. California,* 512 U.S. 967, 972, 114 S. Ct. 2630, 2635 (1994), the Supreme Court set forth several requirements for aggravating factors as a predicate for the death penalty: "First, the circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder. . . . Second, the aggravating circumstance may not be unconstitutionally vague." To satisfy the vagueness review, the aggravating factor must "have some common-sense core of meaning . . . that criminal juries [are] capable of understanding." *Tuilaepa,* 512 U.S. at 975 (*citing Jurek v. Texas,* 428 U.S. 262, 279) (1976) (White, J. concurring )).

Federal capital statutes meet these requirements. After returning a conviction on a criminal offense which authorizes death as a possible punishment, the jury may only impose a death sentence if it unanimously finds one of the mental states set forth in Section 3591(a)(2) and one of the statutory aggravating factors enumerated in Section 3592(c). *See* 18 U.S.C. §

3593(e)(2). A jury may only impose a death sentence if it unanimously finds one of the mental states set forth in Section 848(n)(1) and one of the statutory aggravating factors enumerated in Section 848(n)(2)-(12). *See* 21 U.S.C. § 848(k). The intent element satisfies the rule articulated by the Supreme Court that the death penalty may only be imposed on those who possess a culpable mental state. *Tison v. Arizona*, 481 U.S. 137, 157-58, 107 S. Ct. 1676, 1688 (1986); *Enmund v. Florida*, 458 U.S. 782, 799, 102 S. Ct. 3368, 3377 (1982). The intent requirement performs a narrowing function by limiting the class of persons against whom the death penalty can be imposed. *United States v. Flores*, 63 F.3d 1342, 1369-71 (5th Cir. 1995).

The Statutes narrow the application of the death penalty by requiring the jury to find at least one of the statutory aggravating factors enumerated in Section 3592(c) and 838(n)(2)-(12) of Title 18. These factors cannot reasonably by interpreted to apply to all federal capital crimes. They provide a principled basis for distinguishing between those capital crimes which warrant imposition of the death penalty and those which do not.

This contention has no merit.

## IV. Unconstitutional Grant of Jury Power to Sentence Even if the Defendant Prefers to Waive a Jury

Defendant argues that the requirement that the government give "approval" to a capital defendant's waiver of a jury at sentencing provides the government with the power to force the defendant to be sentenced by a jury in violation of the Fifth and Eighth Amendments. He acknowledges that this argument has been rejected by the courts, which cite Federal Rule of Criminal Procedure 23(a). *See* Def.'s Mem. 4.

The Supreme Court has held that a criminal defendant does not have the right to unilaterally waive a jury determination of guilt. *Singer v. United States*, 380 U.S. 24, 37, 85 S. Ct. 783, 791 (1965). In *Singer,* the Court specifically held that Federal Rule of Criminal Procedure 23(a) was constitutional, even though the rule allowed the United States in essence to "veto" a defendant's request for a bench trial.

There is no meaningful difference between Federal Rule of Criminal Procedure 23(a) and Sections 3593(b)(3) and 848(i). If Rule 23(a) is constitutional, even though it prevents a defendant in a death penalty case from receiving a bench trial on the issue of guilt unless the United States consents, then Sections 3593(b)(3) and 848(i) are constitutional.

The practice is consonant with jury imposition of the death sentence, and its amelioration at the time the Constitution was adopted. *See United States v. Khan,* 325 F. Supp. 2d 218 (E.D.N.Y. 2004) (and authorities cited).

This contention has no merit.

## V. NO MEANINGFUL APPELLATE REVIEW

Defendant contends that a capital punishment scheme must provide for meaningful appellate review, but none is now provided.

The statute itself provides for full appellate review. *See* 21 U.S.C. § 848 (q). There is every reason to believe that the Court of Appeals for the Second Circuit—following general practice—will apply even more heightened standards to its review of capital cases than to other criminal cases.

This contention has no merit.

## VI. Death Penalty is Cruel and Unusual

Defendant claims that the death penalty is cruel and unusual and cannot be enforced. While there is some merit in this suggestion, until the Supreme Court adopts it this court must apply long-standing Supreme Court doctrine that capital punishment is acceptable. *See, e.g., Gregg v. Georgia,* 428 U.S. 153, 177-78 (1975).

This contention has no merit.

## VII. Unconstitutional Broadening of Criminal Behavior

Defendant argues:

> The terms and phrases of the statute fail to permit the jury to function in its narrowing function because the statute's language broadens the interpretation of criminal behavior rather than restricting it. Thus it provides no principled way of distinguishing among murders or murderers.

Def.'s Mem. 57.

After a jury finds applicable one of the mental states listed in Sections 3591(a) and 848(n)(1) of title 18, it still may not impose the death sentence unless it also finds at least one of the statutory aggravating factors in either Section 3592(c) or Section 848(n)(2) through (12). Thus, the mental states requirement acts as a "gatekeeper," but it is the additional statutory aggravators that perform the requisite narrowing function. *United States v. Allen,* 247 F.3d 741, 761 (8th Cir. 2001), *vacated on other grounds,* 536 U.S. 953, 122 S. Ct. 2653 (2002) ("the FDPA adequately narrows the class of persons eligible for the death penalty and sufficiently channels a jury's sentencing discretion"); *United States v. Webster,* 162 F.3d 308, 354-55 (5th Cir. 1998); *United States v. Flores,* 63 F.3d 1342, 1372 (5th Cir. 1995); *United States v. Le,* 327 F. Supp. 2d

601, 609 (E.D.Va. 2004) ("These FDPA aggravating factors provide objective criteria that cannot reasonably be interpreted to apply to all federal capital crimes. . . . [a]s a result, the FDPA constitutionally narrows the class of person eligible for the death penalty.").

The court's charge can adequately alert the jury to the narrowing effect of the statutes. This contention has no merit.


## VIII. NO EXECUTION METHOD

Defendant contends that capital punishment may not be imposed because no execution sentence is specified in the statute.

Methods for execution have been specified and approved. 28 C.F.R. §§ 26.1-26.5 (lethal injection); *United States v. Chandler*, 950 F. Supp. 1545, 1580-81 (N.D.Ala. 1996).

This contention has no merit.


## IX. LETHAL INJECTION IS CRUEL AND UNUSUAL

Defendant argues that lethal injection is cruel and unusual. In some circumstances the method has been inefficacious, causing unnecessary pain and a lingering death. Def.'s Mem. 67 ff. This court has the power to ensure that defendant is treated in a constitutional manner if he is to be killed by the state. *See Morales v. Hickman*, No. C 06-219, 2006 WL 335427 (N.D. Cal. Feb. 14, 2006) (directions on how lethal injection is to be conducted to minimize cruelty). Lethal injection is no worse than other methods of execution in use, and less cruel than those in use when the Constitution was adopted.

This contention has no merit.

## X. SENTENCE OF DEATH IN NEW YORK VIOLATES THE TENTH AMENDMENT

The federal plan requires the states to execute the prisoner. This constitutes, in the defendant's view, the impressing of state officials into its service in violation of the Tenth Amendment. *See, e.g., Printz v. United States,* 521 U.S. 898, 117 S. Ct. 2365 (1997).

No official of the State of New York has objected to assisting the federal government in killing persons condemned to death in a federal criminal proceeding. The effort of defendant to protect an unknown state official against being compelled to carrying out this grisly duty shows a commendable sensitivity and humanity, but establishes no standing. *See, e.g., Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 124 S. Ct. 2301 (2004); *Warth v. Seldin,* 422 U.S. 490, 498-500, 95 S. Ct. 2197, 2205-06 (1975).

This contention has no merit.


## XI. HOMICIDES CHARGED ARE NOT "DURING THE COURSE OF" A CONTINUING CRIMINAL ENTERPRISE

Defendant contends that the murders he was charged with committing are "not during the course of a continuing enterprise" as required by Section 848 of Title 21.

Counts One and Three of the Third Superseding Indictment track Section 848(e)(1)(A) of Title 21. *United States v. Walker,* 142 F.3d 103, 113 (2d Cir. 1998); *United States v. Martinez-Matinez,* No. 01-CR-307, 2001 WL 1287040, at *1 (S.D.N.Y. Oct. 24, 2001). The evidence submitted in connection with suppression and other hearings to-date suggests that the government has evidence tending to prove every necessary element of the federal crimes charged.

This contention has no merit.

12

## XII. SOME OF THE AGGRAVATORS MUST BE STRICKEN

The defendant moves to strike a number of aggravators. The court would prefer to rule on the issues presented, should defendant be found guilty, in preparation for the capital phase of the case. Some rulings are required now so that the issues can be raised at *voir dire* to obtain a jury that can fairly deal with the aggravators which may be relied upon.

The court has already ruled on the record that for Rule 403 reasons and others explained orally, evidence of the aggravating factors of sexual crimes committed on a minor and a sexual assault on an adult will not be permitted. They do not relate to the homicidal characteristics which form the basis of the prosecution and they might well be overvalued in light of recent publicity on sexual assaults on children in this geographic area.

By contrast, aggravating factors of planning and premeditation, pecuniary gain, future dangerousness, lack of remorse, unadjudicated criminal conduct relating to violence and drug dealing conduct all are relevant and highly probative. Def.'s Mem. 150, 160. The parties should be prepared to discuss all factors that might affect the *voir dire* at the time the proposed jury questionnaire is discussed in court.

The victim impact factor on family and friends is constitutional. *See, e.g., Payne v. Tennessee,* 501 U.S. 808, 111 S. Ct. 2597 (1991); *Jones v. Unites States* 527 U.S. 373, 395, 119 S. Ct. 2090, 2105 (1999).

Current notice of uncharged bad acts on which the government intends to rely on should now be given. Failure to give adequate notice before the jury selection may result in a jury that has not been questioned about whether it could fairly consider those acts. *Cf. United States v. Kee,* No. S1 98 CR 778, 2000 WL 863119, at *5 (S.D.N.Y. June 27, 2000). Playing "close to the

vest" on these matters now may create post-verdict problems for the government. It may result in exclusions in the death penalty phrase.

A bill of particulars at this time is not required. Notice sufficient to permit appropriate *voir dire* shall be given now.

In other respects the contention is without merit. The court will consider the need for further notice of details if there is a finding of guilt.

### XIII. JURY MAY NOT BE PERMITTED TO CONSIDER MORE THAN ONE STATUTORY AGGRAVATING FACTOR.

Defendant argues that multiple aggravating factors cannot be considered. The jury will be attempting to get a fully rounded grasp of defendant's personality and background. To do so it should be permitted to have evidence on statutory and relevant non-statutory factors at the same time so long as they are not excluded as prejudicial. The details of the underlying offenses are most useful in trying to understand the defendant. *But see* Def.'s Mem. 114 (arguing to the contrary). That is particularly true in the instant case where the nature of the killings and disposal of the bodies is revealing.

A proper charge will avoid double counting. *See* Def.'s Mem. 112. This is true of both statutory as well as non-statutory factors. *See* Def.'s Mem. 120.

The grand jury's lack of findings on non-statutory aggravators is not decisive to their use in assessing the defendant for death purposes. Artificial exclusions can lead to misleading conclusions about defendant's character for death penalty purposes. Def.'s Mem. 124, 135.

14

None of the factors charged or announced by the government are vague. Pretrial motion practice and delivery by the government of a huge amount of 3500 and other materials has sufficiently alerted the defendant to the nature of the case to be presented should there be a guilty finding. Def.'s Mem. at 145. If there are other materials the government intends to rely on at the death phase which have not yet been revealed, the government should furnish them promptly.

Drug convictions are so intimately involved with the nature of the aggravating factors and implied notice is so precise that they may be used. Def.'s Mem.146.

In other respects the contention lacks merit.


### XIV. USE OF NON-STATUTORY AGGRAVATING FACTORS VIOLATES SEPARATION OF POWERS AND OTHER CONSTITUTIONAL PROVISIONS

Defendant argues that separation of powers prevents use of non-statutory aggravating factors. Def.'s Mem. 170.

The government declared in the Notice of Intent that it intends to rely on a number of non-statutory aggravating factors to justify a sentence of death. Specifically, as to each of the death-eligible counts charged in the superseding indictment, the government states that it intends to present evidence to establish the following non-statutory aggravating factors: (1) future dangerousness as manifested by (a) a continued pattern of violence; (b) correctional institution misconduct and (c) lack of remorse; (2) contemporaneous convictions for multiple murders; (3) obstruction of justice and (4) the impact of the victims' death on their respective families.

Defendant moves to strike the non-statutory aggravating factors claiming that reliance upon them to justify a sentence of death is unconstitutional because the practice constitutes an

15

impermissible delegation of legislative authority to the executive branch. He contends that this delegation of power: (1) is not governed by an "intelligible principle," as required by law; (2) violates the ban on *ex post facto* laws; and (3) is unconstitutional absent appellate proportionality review. Def.'s Mem. 170, 176, 180.

Courts have uniformly rejected the argument that the statutes violate the non-delegation doctrine. *See, e.g., United States v. Allen,* 247 F.3d 741, 759 (8th Cir. 2001), *vacated on other grounds,* 536 U.S. 953 (2002); *United States v. Paul,* 217 F.3d 989, 1003 (8th Cir. 2000); *United States v. Jones,* 132 F.3d 232, 239-40 (5th Cir. 1998), *aff'd* 527 U.S. 373, 119 S. Ct. 2090 (1999); *United States v. Tipton,* 90 F.3d 861, 895 (4th Cir. 1996) (holding that, under 21 U.S.C. § 848, any delegation of legislative authority was permissible, without deciding whether there was in fact any delegation); *United States v. McCullah,* 76 F.3d 1087, 1106 (10th Cir. 1996).

As a practical matter of trial practice, the shift of discretion to the prosecution is necessary in the selection of non-statutory aggravating factors. It remains circumscribed by the notice requirement, Supreme Court death penalty jurisprudence, the role of the district court as a gatekeeper excluding impermissibly prejudicial information, and the requirement that the jury unanimously find intent and at least one statutory aggravating factor before considering non-statutory aggravating factors.

The federal courts hold that "the sentencing function long has been a peculiarly shared responsibility among the Branches of Government and has never been thought of as the exclusive constitutional province of any one Branch." *Mistretta v. United States,* 488 U.S. 361, 390, 109 S. Ct. 647, 664 (1989). The prosecutorial function includes the authority to bring to the sentencer's attention any relevant information pertinent to the sentencing decision and the power to advocate

16

for a conviction and the imposition of a particular sentence. *United States v. Pitera*, 795 F. Supp. 546, 562 (E.D.N.Y. 1992). As the court in *Pitera* observed:

> In a capital case, this advocacy will, in no small part, reflect the prosecution's considered judgment as to why the case was a "proper occasion" for serving a death penalty notice in the first place: an enforcement, not a legislative, decision. Such advocacy does not, however, involve the prosecution in the fixing of sentence. That remains exclusively the jury's function. Indeed, the jury remains free to reject imposition of the death penalty even if fully persuaded of the prosecution's position.

*Id.* (citation omitted).

Unless expressly prohibited, federal courts have permitted the government to introduce "any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed." *Wasman v. United States*, 468 U.S. 559, 563, 104 S. Ct. 3217, 3220 (1984). The role of non-statutory aggravating factors in federal capital sentencing is "virtually the same" as the role of sentencing information in non-capital cases. *Pitera*, 795 F. Supp. at 562.

The function of the prosecutor in alleging non-statutory aggravating factors and proving their existence is "an exercise in advocacy derived from the executive's discretion to prosecute, not the legislature's power to fix sentence." *Id.* at 563. "So long as Congress lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform, such legislative action is not a forbidden delegation of legislative power." *Touby v. United States*, 500 U.S. 160, 165, 111 S. Ct. 1752, 1756 (1991) (internal quotation omitted). Delegation is then constitutionally permissible. *See United States v. Paul*, 217 F.3d at 1003 ("[T]he prosecutor's authority to define non-statutory aggravating factors is a constitutional

delegation of Congress' legislative power."). There are so many variations in cases that Congress could not cover all of them by particularized legislation.

No *ex post facto* element is involved in allowing the prosecution to shape the evidence to meet the details of a crime so long as the basic issues on the capital aspect of the case do not change. Def.'s Mem. 180. *See California Dep't of Corr. v. Morales,* 514 U.S. 499, 504, 115 S. Ct. 1597, 1601 (1995) (*quoting Collins v. Youngblood,* 497 U.S. 37, 43, 110 S. Ct. 2715 (1990). *Accord Hatch v. Oklahoma,* 58 F.3d 1447, 1463-1464 (10th Cir. 1995). The crimes and the applicable punishments for the offenses with which defendant is charged are defined in the criminal statutes cited in the superseding indictment. Each of those statutes existed prior to the time defendant committed the death-eligible crimes with which he is charged.

In *Dobbert v. Florida,* 432 U.S. 282, 97 S. Ct. 2290 (1977), the Supreme Court held that *ex post facto* safeguards are not triggered by procedural changes in a capital sentencing scheme that "simply alter[] the methods employed in determining whether the death penalty [is] to be imposed," where such procedural changes did not change "the quantum of punishment attached to the crime" or the definition of the crime itself. *Id.* at 293-94.

This contention has no merit.

## XV. PROPORTIONALITY REVIEW IS REQUIRED

Although the defendant acknowledges that the Supreme Court has held that the Eighth Amendment does not require state appellate courts to engage in proportionality review, *Pulley v. Harris,* 465 U.S. 37, 43, 104 S. Ct. 871, 875 (1984), he nonetheless argues that this ruling is inapplicable to the federal death penalty acts.

18

Defendant contends that the Constitution requires "proportionality review" when a capital sentencing procedure allows the jury to consider non-statutory aggravating factors because of the danger that the death penalty will be imposed arbitrarily and capriciously. His argument is culled from the Supreme Court's decision in *Zant v. Stephens,* 462 U.S. 862, 103 S. Ct. 2733 (1983), which acknowledged and approved a Georgia statutory sentencing scheme that mandated appellate review "to avoid arbitrariness and to assure proportionality." *Id.* at 890.

Defendant's argument has been rejected by the courts that have considered it. *See, e.g. Allen,* 247 F.3d at 760 (8th Cir. 2001) ("We hold that the FDPA has sufficient safeguards . . . such that proportionality review is not required in order for the FDPA to pass constitutional muster."); *United States v. Cooper,* 91 F. Supp. 2d 90, 99 (D.D.C. 2000); *United States v.Nguyen,* 928 F. Supp. 1525, 1537. As long as a death penalty statute prevents an arbitrary death sentence, the inclusion of non-statutory aggravating factors does not render the death penalty scheme unconstitutional. *Barclay v Florida,* 463 U.S. 939, 956, 103 S. Ct. 3418, 3428 (1983) *(citing Zant,* 462 U.S. at 887-89).

Proportionality review examines the appropriateness of a sentence for a particular crime by comparing the gravity of the offense and the severity of the penalty with sentencing practices in other prosecutions for similar offenses. *See Pulley,* 465 U.S. at 43; *United States v. Jones,* 132 F.3d 232, 240 (5th Cir. 1998). Although the Supreme Court has upheld capital sentencing schemes requiring proportionality review, it has not found such a review to be constitutionally mandated. *See Gregg,* 428 U.S. at 204-07 (1976) (noting the benefits of proportionality review as a means of preventing arbitrary death sentences, but not mandating such review). As the Court explained in *Pulley:*

> Needless to say, that some schemes providing proportionality
> review are constitutional does not mean that such review is
> indispensable . . . Examination of our 1976 cases makes clear that
> they do not establish proportionality review as a constitutional
> requirement.

*Pulley,* 465 U.S. at 44-45. The Constitution requires that the death penalty not be imposed

arbitrarily or capriciously, but it does not require proportionality review in capital cases. This

court and the Court of Appeals will prevent any non-rational disproportionate death sentence.

This contention has no merit.


XVI. PHOTOGRAPHS, CRIME SCENE PLATS AND OTHER EVIDENCE MAY NOT BE USED

Pursuant to Federal Rules of Evidence 401 and 403, defendant moves *in limine* to

preclude the government from introducing photographs of his alleged victims, including the

pictures taken before their murders. Def.'s Mem. 261-279. Rule 401 defines "relevant

evidence" as "evidence having any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be

without the evidence." Rule 403 provides that relevant evidence "may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless

presentation of cumulative evidence."

Photographs of the deceased are admissible so long as they have substantial probative

value and are not offered to inflame or prejudice the jury. *See, e.g., Kuntzelman v. Black,* 774

F.2d 291, 292 (8th Cir. 1985) (admission of crime scene photographs at a homicide trial is error

only if the photographs are not even "arguably relevant and probative"); *United States v. Brady,*

20

579 F.2d 1121, 1129 9th Cir. 1978) (only on rare occasions when the evidence in question "is of such gruesome and horrifying nature that its probative value is outweighed by the danger of inflaming the jury" should it not be received in evidence); *United States v. Naranjo,* 710 F.2d 1465, 1468 (10th Cir. 1983) ("gruesomeness alone does not make photographs inadmissible"); *United States v. Salameh,* 152 F.3d 88, 122-23 (2d Cir. 1998) ("Probative evidence is not inadmissible solely because it has a tendency to upset or disturb the trier of fact," citing *Kuntzelman,* 774 F.2d at 292, and *Brady,* 579 F.2d at 1129).

To the extent that there is a concern that a juror may be unable to fairly evaluate crime scene photographs, the problem can be addressed by *in limine* rulings, or when photographs are offered. *See e.g., Odle v. Calderon,* 884 F. Supp. 1404, 1425 (N.D. Cal. 1995) (*voir dire* can screen for jurors who would be prejudiced by graphic photos). *Cf. Rivers v. United States,* 270 F.2d 435, 439 (9th Cir. 1959) ("The persistent assertion in criminal cases that the jury should not be permitted the benefit of relevant evidence because it is thought to be 'gruesome' constitutes, in effect, an attack upon the entire jury system. . . . Long experience convinces us of the ability and willingness of citizens called for jury duty to perform that duty with fidelity.").

"[T]he graphic or disturbing nature of a photograph alone is not enough to render it inadmissible." *United States v. Salim,* 189 F. Supp. 2d 93, 98 (S.D.N.Y. 2002) (citing *United States v. Velazquez,* 246 F.3d 204, 210-11 (2d Cir. 2001)). For instance, the Court of Appeals for the Second Circuit affirmed the admissibility of "graphic depictions of the corpses" from the 1993 World Trade Center bombing, including a photograph of a "clearly pregnant" victim's body lying on a stretcher. *Salameh,* 152 F.3d at 122. In determining that such graphic depictions are properly admissible, the court stated: "There is no doubt that the testimony and photographs of

21

the victims were shocking, and a significant amount of such evidence was admitted. Nevertheless, . . . the evidence had substantial probative value." *Id.* at 123.

Defendant contends that pictures of the victims while they were alive "are not relevant to any material issue." Def.'s Mem. 275. To prove its case, the government must prove that defendant killed a Jose Rosario and a Carlos Madrid. The government says it intends to have witnesses view pictures of Rosario and Madrid, while they were alive, in order to identify the victims. This practice is less inflammatory than asking witnesses to identify victims from crime scene photographs. The pictures are relevant. *Wilson v. United States,* 162 U.S. 613, 621, 16 S. Ct. 895, 899 (1896) (picture of deceased admissible "on the question of identity"); *United States v. Joe,* 8 F.3d 1488, 1499 (10th Cir. 1993) (photos of homicide victims taken while alive are relevant on issue of identity and not unfairly prejudicial).

Defendant's admissions do not necessarily control admissibility. *See Salameh*, 152 F.3d at 122 (2d Cir. 1998) (quoting *Old Chief v. United States,* 519 U.S. 172, 187-88, 117 S. Ct. 644, 653 (1997)) (citation omitted) (photos admissible despite defense offer to stipulate that explosion at World Trade Center caused death and injury).

The crime scene photographs seem relevant. Detailed rulings *in limine* or at trial when the photographs are shown to the court can avoid undue prejudice and cumulative evidence.

This contention has no merit at this time.


XVII. RESIDUAL DOUBT MUST BE CONSIDERED AT THE CAPITAL PHASE.

The issue of residual doubt can be considered at the charging conference following any guilty verdict. *See United States v. Honken,* 378 F. Supp. 2d 1040, 1040-41 (N.D. Iowa. 2004);

22

*United States v. Davis,* 132 F. Supp. 2d 455, 456-58, 468 (E.D. La. 2001). It need not be decided now.

This contention has no merit at this time.

### XVIII. DEATH PENALTY IS LIMITED TO UNITED STATES CITIZENS

Defendant, a Dominican Republic national observes that his native country does not employ the death penalty and will not extradite an individual to the United States without an assurance that the receiving country will not seek the death penalty. Def.'s Mem. 288. Based on this observation, he argues that this court should hold the death penalty unconstitutional as applied to him. Def.'s Mem. 286-93.

The argument is unavailing. Defendant was not extradited to the United States. After allegedly murdering Rosario and Madrid (but before the government was aware of these crimes), he was deported to the Dominican Republic for having repeatedly raped his girlfriend's 12 year old daughter. Rather than remain in his native country, defendant attempted to sneak back into the United States, which resulted in an illegal re-entry conviction. Having returned illegally, yet willingly, to the United States, defendant argues that he should not be eligible for the death penalty because he could not have been extradited from the Dominican Republic to force the death penalty. The argument has no basis in fact or law.

### XIX. IMPROBABILITY OF CLEMENCY MAKES A DEATH PENALTY UNCONSTITUTIONAL

The Constitution grants the president the "Power to grant Reprieves and Pardons for Offences against the United States." Art. II, § 2, cl. 1. Relying on *Schick v. Reed,* 419 U.S. 256,

95 S. Ct. 379 (1974), defendant argues that the federal death penalty is unconstitutional because President George W. Bush has granted few pardons as President and Governor of Texas. Def.'s Mem. 293-98.

*Schick* involved a prisoner whose death sentence had been commuted to life in prison without parole by President Eisenhower. Shick filed suit arguing that the president exceeded his constitutional authority by imposing a no-parole condition upon the commutation. *Shick*, 419 U.S. at 257. The Supreme Court rejected the argument, holding that the Constitution grants "authority in the President to 'forgive' the convicted in part or entirely, to reduce a penalty in terms of a specified number of years, or to alter it with conditions which are in themselves constitutionally unobjectionable." *Id.* at 266.

Nothing in this or any other case suggests that a prisoner has a right to be pardoned, or that a prisoner's constitutional rights are implicated by the denial of a pardon. This argument has no merit.

## XX. BIFURCATION OF THE PENALTY PHASE REQUIRED

To obtain the defendant's execution, the Government must prove beyond a reasonable doubt the existence of a gateway intent factor and at least one of the statutory aggravators. Def.'s Mem. 245. In *United States v. Davis,* 912 F. Supp. 938 (E.D. La. 1996), the Court suggested that, if the Government presents its proof of the statutory aggravators along with its proof of the non-statutory aggravators, it creates the danger that the jury's decision concerning the statutory aggravators will be improperly influenced by the evidence introduced to support the non-statutory aggravators.

24

The *Davis* Court describes the following possible solution to this problem:

> [I]f the penalty phase is reached in this case, the court is
> considering bifurcating the hearing into two parts. The first part
> would focus exclusively on the two findings the jury must make in
> order to consider the death penalty-whether the intent element was
> established and whether at least one statutory aggravating factor
> was proven. This phase of the penalty hearing presumably would
> rely almost entirely upon the evidence already presented in the
> guilt phase and involve little, if any, additional information. It
> would nonetheless ensure that the jury's findings as to intent and
> the statutory factors would not be influenced by exposure to the
> separate and unrelated nonstatutory factors and information.
> Should the jury make the two requisite threshold findings, the
> hearing would then continue into the presentation of the
> nonstatutory aggravating and mitigating information.

*Davis,* 912 F.Supp. at 949.

This court is not inclined to provide for bifurcation because (1) it complicates the trial

and (2) it makes it more difficult for the jury to obtain a full picture of the defendant. The parties

can bring this matter up again should there be a verdict of guilty.


## XXI. VICTIMS CONSENTED TO THEIR MURDER

The government need not admit, as defendant demands, that the victims consented to the

criminal conduct that resulted in their death. The demand is so far removed from the

circumstances of the case as not to require the government's extensive response. *See* First Gov't

Resp. 65-66.

This claim has no merit.

## XXII. LACK OF VENUE IN THE DISTRICT

Defendant moves to dismiss One, Three and Four of the Third Superseding Indictment for lack of venue. *Def.'s Mem.* pp. 250-257. Counts One and Three charge defendant with committing murder related to a drug trafficking conspiracy. Count Four charges him with obstructing justice.

Venue turns on whether any part of the crime was committed within the district. *United States v. Pannebianco,* 543 F.2d 447, 455 (2d Cir. 1976). Defendant relies on the "key verbs" test to argue that this court lacks venue over Counts One, Three and Four. "The Supreme Court . . . recently warned against an overly rigid application of the key verb test, in which other relevant statutory language might be ignored and prohibited conduct missed." *United States v. Kim,* 246 F.3d 186, 191 (2d Cir. 2001) (citing *United States v. Rodriguez-Moreno,* 526 U.S. 275, 280, 119 S. Ct. 1239 (1999)). "Instead, the Supreme Court directed [trial] courts to first identify the conduct constituting the offense and then determine where the conduct occurred." *Id.* (citing *Rodriguez-Moreno,* 526 U.S. at 279; *United States v. Cabrales,* 524 U.S. 1, 6-7, 118 S. Ct. 1772 (1998)).

Applying the analysis of *Rodriguez-Moreno* and *Kim,* defendant's Section 848(e)(1)(A) crimes consist of two essential conduct elements: (1) engaging in a cocaine and heroin distribution conspiracy and (2) murder during the course of the conspiracy. *United States v. Smallwood,* 293 F. Supp. 2d 631, 638-39 (E.D. Va. 2003). To establish venue, the government need only demonstrate by a preponderance of the evidence that a substantial event constituting one of these two elements took place in part in the Eastern District of New York. *Rodriguez-Moreno,* 526 U.S. at 281 ("where a crime consists of distinct parts which have different localities

the whole may be tried where any part can be proved to have been done") (quotation omitted).

For both Counts One and Three the government relies on the first element to establish venue—defendant's drug conspiracy. To establish venue for a conspiracy, the government need only prove that either defendant or one of his co-conspirators committed a substantial act in this district. *See United States v. Ramirez-Amaya,* 812 F.2d 813, 816 (2d Cir. 1987): *Hyde & Schneider v. United States,* 225 U.S. 347, 367, 32 S. Ct. 793, 802 (1912). The Court of Appeals for the Second Circuit has indicated that "venue is proper in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators. The defendant need not have been present in the district, as long as an overt act in furtherance of the conspiracy occurred there." *United States v. Smith,* 198 F.3d 377, 382 (2d Cir. 1999) (internal quotation omitted). In this case, overt acts in this district include: co-conspirator (and murder victim) Madrid storing drugs in Queens and defendant calling Madrid in Queens to further their drug conspiracy. *See. e.g., id..* ("phone calls from one district to another by themselves can establish venue in either district as long as the calls further the conspiracy").

Defendant cites the capital case venue statute, 18 U.S.C. § 3235, in support of his argument. Section 3235 provides that "[t]he trial of offenses punishable with death shall be had in the county where the offense was committed, where that can be done without great inconvenience." The essential conduct element of engaging in a cocaine and heroin distribution conspiracy took place in Queens. If defendant decided to invoke Section 3235 then the court could hold the trial in Queens unless it would cause great inconvenience—as it would since no federal district courthouse is located there and the Brooklyn Courthouse is readily reached by public transportation from Queens, an adjoining county.

27

The arguments concerning venue lack merit.

## XXIII. LIST OF WITNESSES AND VENIREPERSONS MUST BE SUPPLIED

Venirepersons and witness list are being furnished to defendant on a convenient schedule that protects his rights.

## XXIV. CONCLUSION

The case will proceed in accordance with this memorandum.

SO ORDERED.

Jack B. Weinstein

Dated: February 28, 2006
Brooklyn, New York