**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**



---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 04-CR-156 (JBW) |
| | ) | |
| v. | ) | MEMORANDUM & ORDER |
| | ) | PENALTY PHASE: EXCLUSION |
| HUMBERTO PEPIN TAVERAS, | ) | OF PREJUDICIAL EVIDENCE |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

Appearances:

For the United States of America:
      Roslynn Mauskopf
      United States Attorney
      Brooklyn, New York
      By:    Morris Fodeman
             Lee Freedman

For Defendant:
      Freeman, Nooter & Ginsberg        Lewis & Fiore
      New York, New York               New York, New York
      By:    Louis Freeman        By:    David Lewis

**Table of Contents**

I.      Introduction...................................................................................................................2

II.    Facts...........................................................................................................................3

III.   Law............................................................................................................................4

      A.     Constitutional Requirements at Sentencing.............................................4

      B.     Anti-Drug Abuse Act................................................................................8

      C.     Exclusion of Evidence at ADAA Sentencing.........................................11

IV. Future Dangerousness.................................................................................................14

    A.    Generally...................................................................................................14

    B.    Rationales for Punishment......................................................................15

    C.    *Williams v. New York* and ADAA.........................................................18

    D.    Judge and Jury........................................................................................27

V. Application of Law to Facts.........................................................................................29

    A.    Sexual Abuse of Minor...........................................................................30

    B.    Domestic Abuse of Common Law Wife...................................................33

    C.    Domestic Abuse of Former Girlfriend.....................................................34

VI. Conclusion..................................................................................................................34

JACK B. WEINSTEIN, Senior United States District Judge:

## I.    Introduction

In this capital prosecution, defendant has moved to exclude from any sentencing proceeding evidence of his past sexual abuse of a minor and of brutal physical attacks on adult women with whom he was cohabitating. Balancing probative force against prejudice leads to exclusion of evidence of the former, but not the latter conduct. This result comports with the extreme protections in our Constitution, statutes, and case law against unwarranted imposition of a death sentence.

## II.  Facts

Defendant has been indicted for two murders in the course of a drug trafficking conspiracy.  The government seeks the death penalty.

Count One of the Third Superseding Indictment charges:

> On or about September 17, 1992, within the Eastern District of New York and elsewhere, the defendant HUMBERTO PEPIN TAVERAS, also known as "Tony" and "Luis Rosario," while engaged in an offense punishable under Section 841(b)(1)(A) of Title 21 of the United States Code, to wit: conspiracy to distribute and possess with intent to distribute one or more controlled substances, which offense involved (a) five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, and (b) one kilogram or more of a substance containing heroin, a Schedule I controlled substance, did knowingly and intentionally kill and cause the intentional killing of another person, to wit: Jose Rosario, also known as "Barrigita," . . . .

Sup. Ind. 1-2.

Count Three of the indictment charges the same conduct in connection with the killing of Carlos Madrid in 1995.  Count Two of the indictment has been stricken as violative of the ex post facto clause.  *See United States v. Pepin Taveras*, 401 F. Supp. 2d 304 (E.D.N.Y. 2005).  Count Four charges obstruction of justice between 1995 and 2002, when defendant assaulted and threatened his common law wife to prevent her from informing law enforcement personnel of the Madrid murder.

Listed as aggravating factors warranting the death penalty in the Notice of Intent to Seek the Death Penalty ("Notice") are: defendant's previous narcotics convictions; substantial planning and premeditation of the murders; future dangerousness; contemporaneous criminal charges; obstruction of justice; and impact on the victims' families and friends.  Defendant's

motion to strike some of these statutory and non-statutory aggravating circumstances has been denied. *See United States v. Pepin Taveras*, No. 04-CR-156 (JBW), 2006 WL 473773, at *6-9 (E.D.N.Y. Feb. 28, 2006).

Future dangerousness is to be supported by three categories of evidence: lack of remorse; institutional misconduct; and a continuing pattern of violence. The continuing pattern of violence includes evidence of the crimes alleged in the indictment; crimes for which defendant was previously convicted; child abuse; domestic abuse; and threatening and attempting to kill a prospective unnamed witness. Notice 4-5.

The government proposes to support its allegations of child abuse with proof that defendant sexually and physically abused his stepdaughter, a minor. Domestic abuse is evidenced by defendant's beating and stabbing of two women. Gov't Supp. Br. 4-13. Defendant objects to the introduction of this evidence, arguing that its probative value on the issue of future dangerousness is substantially outweighed by unfair prejudice and the likelihood that it would confuse the jury.

## III. Law

### A. Constitutional Requirements at Capital Sentencing

As construed, the United States Constitution places substantive and procedural limitations on imposition of the death penalty. Substantively, death cannot be imposed where 1) it would be "grossly out of proportion to the severity of the crime," *Coker v. Georgia*, 433 U.S. 584, 592, 97 S. Ct. 2861, 2866 (1977), or 2) where imposition would "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S. Ct. 2909, 2925

(1976) (plurality opinion). Procedurally, legislatively defined practice that "suitably direct[s] and limit[s]" the discretion of the sentencing body "so as to minimize the risk of wholly arbitrary and capricious action," *id.* at 189, must be followed.

The capital punishment scheme must comprise both an eligibility phase and a selection phase. At the eligibility phase, procedures must ensure that a sentencing body may only impose the death penalty if it has found—either through the categorical narrowing of death-eligible crimes, *Jurek v. Texas*, 428 U.S. 262, 270, 96 S. Ct. 2950, 2955 (1976) (plurality opinion); or by an explicit finding at sentencing, *Gregg*, 428 U.S. at 206—the existence of at least one aggravating factor. *See, e.g.*, Model Penal Code § 210.6(3) (listing recommended aggravating circumstances, including murder by imprisoned convict, previous conviction for violent felony, and commission of multiple murders at the same time).

At the selection phase, sentencing discretion must be "channeled," *Gregg* at 206, by requiring the sentencing body to consider "relevant facets of the character and record of the individual offender or the circumstances of the particular offense," *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S. Ct. 2978, 2991 (1976) (plurality opinion), which provide a "meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not." *Gregg*, 428 U.S. at 188. The trier *may* consider delimiting aggravating factors, *Zant v. Stephens*, 462 U.S. 862, 878, 103 S. Ct. 2733, 2743 (1983); it *must* consider any relevant mitigating factors. *Woodson*, 428 U.S. at 304.

Aggravating and mitigating circumstances are not treated identically. With possible exceptions not relevant here, the type of mitigating factors presented may not be limited. The sentencing body must "not be precluded from considering, *as a mitigating factor*, any aspect of a

5

defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S. Ct. 2954, 2964-65 (1978) (plurality opinion) (emphasis in original); *see also Eddings v. Oklahoma*, 455 U.S. 104, 110, 102 S. Ct. 869, 874 (1982) (applying *Lockett*).

By contrast, the use of statutory aggravating factors is strictly bounded. First, aggravating circumstances that serve as predicates for eligibility for the death penalty "must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens*, 462 U.S. 862, 877, 103 S. Ct. 2733, 2742 (1983). *See also Arave v. Creech*, 507 U.S. 463, 474, 113 S. Ct. 1534, 1542 (1993) ("If the sentencer fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty, the circumstance is constitutionally infirm." (emphasis in original)). Second, statutory aggravating circumstances may not be unduly vague. *Tuilaepa v. California*, 512 U.S. 967, 972, 114 S. Ct. 2630, 2635 (1994); *see also Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S. Ct. 1759, 1765 (1980) (standards for sentencing must not be "so vague that they would fail adequately to channel the sentencing decision patterns of juries").

A statute may make use of additional aggravating circumstances to be considered when "selecting, from among [the] class [of death-eligible defendants], those defendants who will actually be sentenced to death." *Id.* at 878. The function of these factors is to provide for "an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Id.* at 879 (emphasis in original). *Cf. id.* at 885 (permitting evidence used in support of invalid statutory aggravating factor to be used at selection phase). *See also Barclay v.*

*Florida*, 463 U.S. 939, 957, 103 S. Ct. 3418, 3428 (1983) (while the "propriety of a sentence based entirely on nonstatutory aggravating factors" is dubious, there is "no constitutional defect in a sentence based on both statutory and nonstatutory aggravating circumstances"). Nonstatutory aggravating factors must not be unduly vague. *Tuilaepa*, 512 U.S. at 973 (both "eligibility and selection factors" are examined "for vagueness").

This distinction in treatment of aggravating and mitigating circumstances accords with the history of individualized sentencing, which was born of the impulse to humanize punishment. This "movement was impelled both by ethical and humanitarian arguments against capital punishment, as well as by the practical consideration that jurors were reluctant to bring in verdicts which inevitably called for its infliction." *Andres v. United States*, 333 U.S. 740, 753, 68 S. Ct. 880, 886 (1948) (Frankfurther, J., concurring). Widespread in England and the American colonies was a revulsion over a vicious criminal law that imposed death automatically for even the most minor felonies by young and old alike. *See, e.g.*, Adam Jay Hirsch, The Rise of the Penitentiary 5-6 (Yale University Press 1992) (in seventeenth-century England and Massachusetts, "such routine crimes against property as theft and burglary" were punishable by death; yet "both judges and juries . . . demonstrated an extreme reluctance to execute" for minor crimes). "Almost every State passed mitigating legislation." *Andres*, 333 U.S. at 753. The "flexibility" introduced into modern sentencing "recognized that individual culpability is not always measured by the category of the crime committed. This change in sentencing practice was greeted by the [Supreme] Court as a humanizing development." *Woodson*, 428 U.S. at 298. *See also id.* at 291 (discretionary sentencing "remedied the harshness of mandatory statutes by permitting the jury to respond to mitigating factors by withholding the death penalty").

7

In the present era, use of mitigating factors is a primary technique for achieving individualized sentences. *See, e.g., Lockett v. Ohio,* 438 U.S. at 604-5 ("individualized decision is essential in capital cases"; it requires that "the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death" (emphasis in original)); *Woodson,* 428 U.S. at 304 ("A process that accords no significance to relevant facets of the character and record of the individual offender or the circumstances of the particular offense excludes from consideration in fixing the ultimate punishment of death the possibility of compassionate or mitigating factors stemming from the diverse frailties of humankind."); *Williams v. New York,* 337 U.S. 241, 249, 69 S. Ct. 1079, 1084 (1949) (the change to discretionary sentencing was motivated by "the belief that by careful study of the lives and personalities of convicted offenders many could be less severely punished and restored sooner to complete freedom and useful citizenship. This belief to a large extent has been justified.").

While individualized sentencing requires consideration of aggravating circumstances, admission of evidence in support of mitigating factors in capital cases is granted a priority. *See Tuilaepa,* 521 U.S. at 972 (constitutional selection requirement "is met when the jury can consider relevant mitigating evidence of the character and record of the defendant and the circumstances of the crime"); *Gregg,* 428 U.S. at 203-4 ("So long as the evidence introduced and the arguments made at the presentence hearing *do not prejudice a defendant,* it is preferable not to impose restrictions [on information offered at sentencing proceedings]." (emphasis supplied)); *see also Tuilaepa,* 512 U.S. at 988 (Blackmun, J., dissenting) ("Although we have required that

jurors be allowed to consider as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense . . . we have never approved such unrestricted consideration of a circumstance in aggravation." (internal quotation marks and citations omitted)).

### B.    Anti-Drug Abuse Act

The Anti-Drug Abuse Act ("ADAA"), section 848 of title 21 of the United States Code, provides for the death penalty. It reads:

> [A]ny person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death . . .

21 U.S.C. § 848(e)(1)(A).

Section 841(b)(1)(A) of title 21 criminalizes various narcotics trafficking offenses, including distribution and possession with intent to distribute heroin and cocaine. A person who conspires to commit a violation of section 841—the charge against defendant—is subject to the same penalties as one who commits the substantive offense. 21 U.S.C. § 963.

Under the ADAA, the trial is bifurcated. If a guilty verdict is returned, a capital sentencing hearing is conducted.

The capital sentencing hearing is structured to favor the defendant. It differs from the guilt-finding phase in several respects. First, to ensure appropriateness to the individual and his

crimes, much information that would be inadmissible at the guilt phase may be received. *See* 18 U.S.C. § 848(j) (relevant information to be presented to jury "regardless of its admissibility under the rules governing admission of evidence at criminal trials"). Second, the jury's determination is highly structured.

The jury first determines whether defendant possessed one of four mental states demonstrating intent to kill or inflict serious bodily injury or to engage in conduct creating a grave risk of death. 21 U.S.C. § 848(n)(1). If none of these mental states is found, the court must impose a sentence other than death. 21 U.S.C. § 848(k). The government's death notice denominates these mental states as "preliminary factors," *see* Notice 2, even though the statute terms them aggravating factors.

If the jury finds one of the preliminary intent factors, it considers the existence of any other aggravating or mitigating factors. 21 U.S.C. § 848(k). The other aggravating factors enumerated in the statute include defendant's criminal history, commission of the murder for pecuniary gain, vulnerability of the victim, and torture. 21 U.S.C. § 848(n)(2)-(12). Aggravating factors not enumerated by the statute may also be alleged. 21 U.S.C. § 848(h)(1)(B). The government bears the burden of proving any aggravating factor beyond a reasonable doubt. 21 U.S.C. § 848(j). Aggravating factors must be found unanimously. 21 U.S.C. § 848(k). If no aggravating factor besides the preliminary intent factors is found, a sentence of death may not be imposed. *Id.*

Proof of mitigating factors rests with the defendant, who must demonstrate them only by a preponderance of the evidence—in contrast to the government's beyond-a-reasonable-doubt burden. 21 U.S.C. § 848(j). Enumerated mitigating factors include diminished capacity; duress;

minor participation in the crime; unforeseeability of the victim's death; the defendant's youth; limited criminal history; severe emotional disturbance; non-capital sentences imposed on equally or more culpable co-defendants; consent of the victim to the conduct resulting in his death; and any other evidence pertinent to his background or character. 21 U.S.C. § 848(m)(1)-(10). *Any* juror who is satisfied by defendant's proof of *any* mitigating factor may consider it established, regardless of the other jurors' opinions. 21 U.S.C. § 848(k).

If an aggravating factor besides one of the preliminary intent factors is found, the jury weighs the aggravating factors against any mitigating factors and votes for or against death. *Id.* If the aggravating factors "sufficiently outweigh" the mitigating factors in a juror's estimation, he may vote for death. Each juror is free to give the factors established the weight he feels is appropriate. *Id.* Absence of mitigating factors does not require a juror to vote for death. *Id.* A juror may decide that, even if he or she has found that aggravating factors and no mitigating factors exist, the aggravating factors are not sufficient to justify death. *Id.* A vote for death must be unanimous. *Id.* A jury is never required to recommend a sentence of death, regardless of its findings as to aggravating and mitigating circumstances. *Id.* Thus any single juror can block the death penalty for purely idiosyncratic reasons. Unlike the guilt phase, a lack of agreement does not result in a mistrial with a possible new trial. *See* § 848(l) ("Upon the recommendation that the sentence of death be imposed, the court shall sentence the defendant to death. *Otherwise* the court shall impose a sentence, other than death, authorized by law." (emphasis supplied)).

## C.    Exclusion of Evidence at ADAA Sentencing

The aim of the complicated capital sentencing procedures is to yield an "individualized" decision, *Zant v. Stephens*, 462 U.S. 862, 879, 103 S. Ct. 2733, 2743-44 (1983), that meets a "heightened standard of reliability." *Ford v. Wainwright*, 477 U.S. 399, 411, 106 S. Ct. 2595, 2602 (1986). While the strict evidentiary standards of trials do not apply at sentencing under the death penalty statute, the court retains the power and the duty to ensure that the hearing is conducted appropriately. Irrelevant or unduly prejudicial information is excluded. Section 848(j) provides:

> Information presented may include the trial transcript and exhibits if the hearing is held before a jury or judge not present during the trial, or at the trial judge's discretion. Any other information *relevant* to such mitigating or aggravating factors may be presented by either the Government or the defendant, regardless of its admissibility under the rules governing admission of evidence at criminal trials, except that information *may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.*

21 U.S.C. § 848(j) (emphasis supplied). *See also* 18 U.S.C. § 3593(c) (permitting exclusion in Federal Death Penalty Act (FDPA) prosecution if "its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.").

The exclusion clause in section 848(j) echoes Rule 403 of the Federal Rules of Evidence. *See* Fed. R. Evid. 403 (permitting exclusion of evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury"). *But cf. United States v. Sampson*, 335 F. Supp. 2d 166, 177 (D. Mass. 2004) (noting that FDPA standard is more restrictive than Rule 403). Under the death penalty provisions undue delay, presentation of cumulative evidence, and waste of time are not explicit grounds for exclusion.

Federal Rule of Evidence 403 includes these as grounds for exclusion. *See, e.g., Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 650 (1997) ("Rule 403 . . . authorizes exclusion of relevant evidence when its 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" (quoting Fed. R. Evid. 403)).

Sentencing procedures in capital cases are designed to serve the "need for reliability in the determination that death is the appropriate punishment in a specific case." *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991 (1976). If evidence does not serve that need—because it is irrelevant or unduly prejudicial—it should not be introduced.

Wide discretion is lodged in the district court to exclude evidence that is, on balance, unduly prejudicial. Out of respect for "trial court[] expertise," *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006) (affirming district court's exclusion of grand juror testimony in perjury trial), evidentiary rulings are reviewed solely for abuse of discretion. *Old Chief v. United States*, 519 U.S. at 174 n.1. *See also United States v. Salameh*, 152 F.3d 88, 110 (2d Cir. 1998) ("A district court is obviously in the best position to do the balancing mandated by Rule 403. We will second-guess a district court only if there is a clear showing that the court abused its discretion or acted arbitrarily or irrationally. (internal quotation marks and citations omitted)). "[S]o long as the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational." *United States v. Awadallah*, 436 F.3d at 131. *See also Hester v. BIC Corp.*, 225 F.3d 178, 181 (2d Cir. 2000) ("A district court's evidentiary rulings will be disturbed only if they are manifestly erroneous." (internal quotation marks omitted)).

13

The ADAA, like Rule 403, permits exclusion of evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." 21 U.S.C. § 848(k); Fed. R. Evid. 403. Evidence is probative to the degree it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (defining relevancy). *See also* Fed. R. Evid. 401 advisory committee's notes (1972) ("Problems of relevancy call for an answer to the question whether an item of evidence, when tested by the processes of legal reasoning, possesses sufficient probative value to justify receiving it in evidence."). Evidence is unfairly prejudicial to the degree that it has "an undue tendency to suggest decision on an improper basis, commonly . . . an emotional one." Fed. R. Evid. 403 advisory committee's notes (1972).

## IV.    Future Dangerousness

### A.    Generally

Frequently, future dangerousness is alleged as an aggravating circumstance. *See* Decl. of David Bruck of June 14, 2004 at ¶ 5-6 (available at www.capdefnet.org, last visited on March 14, 2006) (future dangerousness has been alleged in more than three-quarters of the federal capital trials since 1995). Much less often is it found to exist. *Id.* (future dangerousness found in one-third of trials in which it is alleged). *Cf. Arave v. Creech*, 507 U.S. 463, 474, 113 S. Ct. 1534, 1542 (1993) ("If the sentencer fairly could conclude that an aggravating circumstance applies to every defendant eligible for the death penalty, the circumstance is constitutionally infirm.").

14

Projections of future dangerousness are precarious. They require jurors to predict, beyond a reasonable doubt, future conduct based on an often uncertain pattern of past behavior. The high burden of proof, in the context of dubious projections of highly variable human conduct, may explain why jurors have rarely found future dangerousness to be established. *See United States v. Sampson*, 335 F. Supp. 2d at 222 (questioning whether jurors can predict future dangerousness with the reliability required by the due process clause in a capital prosecution). *But cf. Jurek v. Texas*, 428 U.S. 262, 275, 96 S. Ct. 2950, 2957 (1976) (determining bail, sentencing, and release on parole are common examples of determination of a defendant's likely future conduct).

While future dangerousness has been held to be an appropriate factor for a jury to consider when recommending a sentence, *see Jurek v. Texas*, 428 U.S. at 274-5 (rejecting challenge to statutory factor that asked jury to determine "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society"), particular care must be exercised to ensure that evidence admitted in its support is relevant to this factor and not unduly prejudicial. "Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." *Woodson v. North Carolina*, 428 U.S. at 305.

## B. Rationales for Punishment

The four classic justifications for punishment are just deserts, deterrence, incapacitation, and rehabilitation. *See* U.S.S.G. Chap 1., Pt. A(2) (1987) (Sentencing Guidelines are intended to "further the basic purposes of criminal punishment, *i.e.*, deterring crime, incapacitating the offender, providing just punishment, and rehabilitating the offender." (emphasis in original)); *see also, e.g.*, Andrew von Hirsch, Doing Justice: The Choice of Punishments xxviii-xxix (1976) (describing restraint of the criminal, deterrence, rehabilitation, and desert as traditional "aims to be served in deciding how the law should respond to law breakers"). They are embodied in section 3553(a) of title 18 of the United States Code governing imposition of sentence for any federal crime where another specific sentence is not required. *See* 18 U.S.C. § 3553(a)(2) (court shall consider need to "provide just punishment," "afford adequate deterrence," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

Not all four justifications are appropriate bases for punishment in any given case. *See, e.g., United States v. Blarek*, 7 F. Supp. 2d 192 (E.D.N.Y. 1998) (applying general deterrence and deserts, but not specific deterrence or incapacitation as bases for sentence). It is the government that defines the rationales it believes are fitting in a given capital case by alleging particular aggravating circumstances.

Most of the statutory aggravating factors in the ADAA—and all those alleged by the government in this case—are based on deterrence and just deserts: that defendant has been previously convicted of and jailed for narcotics violations would tend to show that greater

16

deterrence is required to affect his behavior; and that he committed each of two murders after substantial planning and premeditation would suggest that the killings require severe moral condemnation. The non-statutory aggravating factors relied upon by the prosecution are also primarily based on just deserts and deterrence. Obstruction of justice requires more deterrence to reduce escapes from justice—a killer should know that it is dangerous to attempt to cover up his tracks. Victim impact evidence allows a jury to understand the seriousness of the crime by considering the effects on family and friends of the loss of the victim's life.

Future dangerousness draws on the incapacitation rationale—the only way to adequately protect the public from future crimes of the defendant is to incapacitate by killing. A long term of imprisonment would be insufficient, it is argued, because defendant falls outside the mass of those who commit crimes during their youth and then cease as they mature and develop a better understanding of their responsibility to conform their behavior to the needs of the community. *See, e.g.*, Bureau of Justice Statistics, State Court Sentencing of Convicted Felons, 2002, at Table 2.1 (May 2005) (42 percent of all violent offenses are committed by those between the ages of 20 and 29; offenders over the age of 50 commit only seven percent of all violent crimes). This defendant is 42 years old.

Even life imprisonment would be insufficient, it is urged, because a defendant may present a threat to other inmates or correctional staff. This last line of argument has led some defendants to contend that only evidence of their future dangerousness inside a correctional facility should be considered, since, if not sentenced to death, they are highly likely to spend the rest of their lives in prison. *Compare United States v. Hargrove*, No. CRIM.A. 03-20192-CM, 2005 WL 2122310 (D. Kan. Aug. 25, 2005), at *6 (restricting evidence to that which would

suggest dangerousness in prison), *with United States v. Kee*, No. S1 98 CR 778 (DLC), 2000 WL 863119, at \*8 (S.D.N.Y. June 27, 2000) (rejecting this approach). This contention loses some force since life imprisonment without parole is not the only alternative to death. *See* 21 U.S.C. § 848(e)(1)(A) (permissible sentences for intentional killing in furtherance of a continuing criminal enterprise include "any term of imprisonment, which shall not be less than 20 years"); *but see infra*, V.B (likelihood of a lengthy sentence may affect the relevance of particular allegations).

Information admitted on the factor of future dangerousness should support the need for incapacitation. The government's categories of supporting evidence do so. It alleges institutional misconduct, lack of remorse, and a continuing pattern of violence. Institutional misconduct is pertinent: if a defendant has, as is here alleged, possessed weapons and attempted to kill a witness against him since his incarceration pending trial, *see* Notice 4, it is more likely that he will continue to be an ever-present danger to inmates and corrections personnel.

Lack of remorse demonstrates a negative. If defendant, even upon his arrest, incarceration and pending trial, has not expressed remorse for the killings, he is less likely to be rehabilitated or deterred from crime by further incarceration, making the ultimate form of incapacitation through death a proper sentence.

A continuing pattern of violence would suggest that defendant's conduct is not aberrational. Here defendant is accused of killing two fellow drug dealers, one of whom he contends was attempting to kill him. Defendant's self-defense stance would be undercut if the government were to prove that defendant has engaged in violence against a variety of different persons, some of them not involved in the drug trade, before and after his incarceration. It would suggest that the charged murders were not solely the product of temporary business stresses, but

18

a regular part of defendant's manner of conducting himself. Particularly where defendant has served past prison terms for crimes, it is less likely that he could be deterred or rehabilitated by available corrections techniques.

### C. *Williams v. New York* and ADAA

The Supreme Court's decision in *Williams v. New York*, 337 U.S. 241, is relied upon by the government as a basis for an expansive reading of the evidence that should be admitted against a defendant at a sentencing hearing. The argument is dubious. The bases of the *Williams* decision, written in 1949, well before the modern death penalty era of *Furman* and *Gregg*, have been eroded as applied to capital cases.

*Williams* rejected any "constitutional distinction" between capital and non-capital sentencing procedures. This position was rejected in *Woodson*, which stressed the uniqueness of death imposed by the state.

> [T]he penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.

428 U.S. at 305. The proposition that "death is different" is central to the Court's death penalty jurisprudence. *See, e.g., Caldwell v. Mississippi*, 472 U.S. 320, 105 S. Ct. 2633 (1985) (vacating sentence because prosecutor's remarks were inconsistent with the "heightened 'need for reliability'" in capital cases (citing *Woodson*)); *Harmelin v. Michigan*, 501 U.S. 957, 994, 111 S.

Ct. 2680, 2701 (1991) (refusing to require proportionality review of life imprisonment for narcotics offense; "[p]roportionality review is one of several respects in which we have held that 'death is different,' and have imposed protections that the Constitution nowhere else provides.").

The *Williams* court declared that "no federal constitutional objection would have been possible" if the judge sentenced the defendant to death because his "trial manner impressed the judge that appellant was a bad risk for society, or if the judge had sentenced him to death giving no reason at all." 337 U.S. at 252. This rationale is no longer supportable. *See, e.g., Furman v. Georgia*, 408 U.S. 238, 310, 92 S. Ct. 2726, 2763 (1972) (Stewart, J., concurring) ("[T]he Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed."); *Gardner v. Florida*, 430 U.S. 349, 358, 97 S. Ct. 1197, 1204 (1977) ("It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion.").

Not only the rationale, but also the underlying facts of *Williams*, would now be rejected as a basis for a death sentence. There the psychiatric report relied upon by the trial judge had not been examined by the defendant. 337 U.S. at 253 (Murphy, J., dissenting). *Cf. Estelle v. Smith*, 451 U.S. 454, 471, 101 S. Ct. 1866, 1877 (1981) (defendant's Sixth Amendment rights violated by admission at capital sentencing of psychiatric testimony based on examination of defendant without notice to counsel). The aggravating circumstances relied on by the trial court in *Williams*—that defendant possessed "a morbid sexuality" and was "a menace to society," 337 U.S. at 244—would likely be struck down under current precedent. *See, e.g., Maynard v. Cartwright*, 486 U.S. 356, 364, 108 S. Ct. 1853, 1859 (1988) (aggravating circumstance that

20

crime was "especially heinous, atrocious, or cruel" did not adequately guide sentencer discretion). Application of *Williams* to the current prosecution would also elide the necessary distinction between judge and jury sentencing. *See infra*, IV.D.

Though the Court did not rule that the due process clause did not apply to sentencing, *see Williams*, 337 U.S. at 252 n. 18, it is doubtful whether the narrow scope given the due process clause in *Williams* comports with contemporary death case jurisprudence. *See, e.g., Gardner v. Florida*, 430 U.S. at 358 ("[I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause."); *Estelle v. Smith*, 451 U.S. at 463 ("Given the gravity of the decision to be made at the penalty phase, the State is not relieved of the obligation to observe fundamental constitutional guarantees."). *Compare Gardner* at 361 (state must disclose to capital defendant contents of sentencing report; "Without full disclosure of the basis for the death sentence, the Florida capital-sentencing procedure would be subject to the defects would resulted in the holding of unconstitutionality in *Furman v. Georgia*.") *with Williams* at 252 (although defendant had no opportunity to review presentence report, "[w]e cannot say that the due-process clause renders a sentence void merely because a judge gets additional out-of-court information to assist him in the exercise of this awesome power of imposing the death sentence."). The *Williams* rationale—that the Constitution demands little of capital sentencing procedures—is in tatters.

Finally, *Williams*, ruling on the constitutionality of a state statute, necessarily discussed constitutional minima. Congress may provide more protection than does the Constitution. Constitutional precedents should not be read to limit the higher protections provided by statutes. *Williams* explicitly recognized this: "[The sentencer's] task *within fixed statutory or*

*constitutional limits* is to determine the type and extent of punishment after the issue of guilt has been determined." *Williams*, 337 U.S. at 247 (emphasis supplied). The ADAA provides such limits. Like Rule 403 of the Federal Rules of Evidence, the ADAA permits exclusion of evidence if, in the judgment of the trial court, "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." § 848(j).

The ADAA provides more protection to defendants than is constitutionally required in a number of ways. They provide a useful context for consideration of exclusion of evidence under section 848(j).

First, only one valid aggravating circumstance is constitutionally required to justify imposition of the death penalty. *Tuilaepa*, 512 U.S. at 972. A defendant's mens rea can provide the aggravating circumstance, even if it is included in the definition of the crime. *Lowenfield v. Phelps*, 484 U.S. 231, 246, 108 S. Ct. 546, 555 (1988) (upholding imposition of death sentence based on jury finding that "the offender ha[d] a specific intent to kill or to inflict great bodily harm upon more than one person."). The ADAA requires two aggravating circumstances. The sentencer must find beyond a reasonable doubt that the defendant acted with intent—to kill; to inflict serious bodily injury; to engage in conduct that he intended would result in the victim's death; or to engage in conduct that he knew would create a grave risk of death. 21 U.S.C. § 848(n)(1). It must also find beyond a reasonable doubt the existence of one additional statutory aggravating circumstance. 21 U.S.C. § 848(k). Without establishment of these stringent conditions, no federal death penalty may be imposed. *Id.*

Second, statutory factors to be considered at sentencing need not be defined as aggravating or mitigating to pass constitutional muster. Janus-faced factors have been upheld

against challenges for their failure to adequately channel the sentencer's discretion, *see Tuilaepa*, 512 U.S. at 977, even though they permit a prosecutor to argue that, for example, age is an aggravating circumstance when the defendant was in his teens, twenties, thirties, forties or fifties at the time of the crime; *see id.* at 988-9 (Blackmun, J., dissenting) (collecting cases); or that the circumstances of the crime are aggravating because the defendant killed for a particularly insidious motive, such as pecuniary gain, or for no motive at all; because he killed in cold blood or in the heat of passion; because the victim was killed without warning or after substantial pain and delay; or that the age of the victim was aggravating because the victim was a child, or an adolescent, or a young adult, or in the prime of life, or elderly, *id.* at 986-7 (collecting cases); or that the defendant's criminal history is aggravating even where the previous criminal history involved "trivial incidents of misconduct and ill temper." *Id.* at 989.

The ADAA denominates the statutory factors to be considered by the sentencer as either aggravating or mitigating, *see* 21 U.S.C. § 848(m) and (n); and the Protean factors denounced by Justice Blackmun do not reappear under the guise of malleable aggravating factors. Motive may be an aggravating circumstance, but only where the motive is "pecuniary gain." 21 U.S.C. § 848(n)(7). The degree of planning may be an aggravating circumstance, but only when "[t]he defendant committed the offense after substantial planning and premeditation." § 848(n)(8). The victim's age is aggravating only if it indicates vulnerability. 21 U.S.C. § 848(n)(9). The length of the ordeal is aggravating only if it was part of a killing that "involved torture or serious physical abuse to the victim." 21 U.S.C. § 848(n)(12). The statute specifically defines the previous offenses that are sufficient to constitute an aggravating circumstance of a defendant's criminal history. 21 U.S.C. § 848(n)(2) (previous offense resulting in death and punishable by

life imprisonment or death); 21 U.S.C. § 848(n)(3) (two or more previous offenses punishable by more than one year imprisonment, committed on different occasions, involving the actual or attempted infliction of "serious bodily injury"); 21 U.S.C. § 848(n)(4) (two or more previous offenses punishable by more than one year involving distribution of narcotics); 21 U.S.C. § 848(n)(10) (previous federal narcotics offense punishable by five or more years, or previous continuing criminal enterprise conviction).

Third, the Court has left undisturbed aggravating factors that might be unconstitutionally vague on their face if the courts interpreting them have given them a sufficiently narrow meaning. *See, e.g., Gregg*, 428 U.S. at 202-3 (upholding a state statutory aggravating circumstance—creating a "great risk of death to more than one person"; although the factor was "susceptible of an overbroad interpretation," the state supreme court had demonstrated "a concern that the new sentencing procedures provide guidance to juries[]" by distinguishing between a man who "stood up in a church and fired a gun indiscriminately into the audience" and one who "simply kidnaped in a parking lot" one victim); *see also Proffitt*, 428 U.S. at 255-6 (facially vague aggravating circumstance, "as . . . construed, provides []adequate guidance" to sentencer). Aggravating circumstances that the Court has permitted to stand against vagueness challenges include: that the defendant was a "cold-blooded, pitiless slayer," *Arave v. Creech*, 507 U.S. 463, 472-3, 113 S. Ct. 1534, 1541-42 (1993); that there was "a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society," *Jurek*, 428 U.S. at 274-6; and that the defendant caused a victim to suffer "mental anguish including a victim's uncertainty as to his ultimate fate." *Walton v. Arizona*, 497 U.S. 639, 654, 110 S. Ct. 3047, 3057 (1990), *overruled on other grounds, Ring v. Arizona*, 536 U.S.

584, 122 S. Ct. 2428 (2002). Reliance on judicial narrowing provides less reliable protection to defendants than aggravating circumstances that, on their face, sufficiently channel and guide sentencer discretion.

The aggravating circumstances provided for in the ADAA do not depend on judicial narrowing for their validity. All have the "common-sense core of meaning" that the Constitution requires. *Tuilaepa*, 512 U.S. at 973. The ADAA's aggravating circumstances require a sentencer to find that a defendant: acted with intent, § 848(n)(1); has been previously convicted of certain defined offenses, § 848(n)(2), (3), (4), and (10); procured or performed murder for hire, § 848(n)(6) and (7); committed the murder after substantial planning or premeditation, § 848(n)(8); killed a victim who was "particularly vulnerable due to old age, youth, or infirmity," § 848(n)(9); killed in connection with the sale of narcotics to those under the age of 21, § 848(n)(11); or tortured or inflicted "serious physical abuse" on the victim. § 848(n)(12). Although one statutory factor, "defendant knowingly created a grave risk of death to one or more persons in addition to the victim of the offense," § 848(n)(5), is nearly identical to the potentially overbroad factor in *Gregg*, it takes little court guidance to provide the factor with sufficient narrowing definition. *See Gregg, supra,* 428 U.S. at 202-3. In general, then, the ADAA's statutory aggravating factors provide far more control of the sentencer than is constitutionally mandated.

Fourth, it is not constitutionally required that a capital statute or the judiciary provide instructions directing the sentencer how to weigh aggravating and mitigating circumstances. *Zant*, 462 U.S. at 880. *See also Blystone v. Pennsylvania*, 494 U.S. 299, 306-7, 110 S. Ct. 1078, 1083 (1990) (no requirement that jury weigh severity of aggravating circumstances). This is so

25

even though it presents the risk that "jurors—or even judges—will treat the absence of a mitigator as an aggravator . . . ." *Tuilaepa*, 512 U.S. at 990 (Blackmun, J., dissenting). The ADAA provides explicit directions that, after determining that the defendant is death eligible, the sentencer "shall then consider whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death." § 848(k). The sentencer is never required to impose the death penalty, notwithstanding its findings as to aggravating and mitigating factors. *Id.* Cf. *Jurek*, 428 U.S. at 269 (upholding capital statute that required imposition of the death penalty if sentencer found two aggravating circumstances).

Fifth, the Court has never held that appellate review is constitutionally required, though it has suggested that the presence of review is strong evidence of a capital punishment procedure's lawfulness. *See, e.g., Clemons v. Mississippi*, 494 U.S. 738, 749, 110 S. Ct. 1441, 1448 (1990) ("[T]his Court has repeatedly emphasized that meaningful appellate review of death sentences promotes reliability and consistency."). Death sentences imposed pursuant to the ADAA are guaranteed appellate review. § 848(q)(1). Indigent capital defendants are also guaranteed the assistance of investigators, experts or other consultants when they are "reasonably necessary," § 848(q)(9); arguably, this is not constitutionally required.

Congress has also enacted Federal Rule of Criminal Procedure 12.2 addressing the procedures to be applied when defendants facing capital charges intend to use expert mental health evidence in their defense. The Rule, also, it can be contended, is more generous than the Constitution requires. *Compare* Fed. R. Crim. P. 12.2(c)(2) (requiring results of court-ordered examination of defendant by government experts to be sealed until sentencing in a capital trial)

*with United States v. Hall*, 152 F.3d 381 (5th Cir. 1998) (while scaling results of pretrial government examination of a defendant is salutary for both defendants and judicial economy, "such a rule is not constitutionally mandated"). *See also United States v. Pepin Taveras*, — F.R.D. —, No. 04-CR-156 (JBW), 2006 WL 408360 (E.D.N.Y. Feb. 22, 2006) (applying Rule 12.2).

There is no reason to believe that Congress would explicitly exceed the protections required by the Constitution in so many ways only to undermine them by allowing the indiscriminate introduction of evidence at sentencing through the use of potentially prejudicial non-statutory aggravating circumstances. This conclusion supports giving the ADAA provision permitting exclusion of evidence at least the force carried by Rule 403, with protective power added by the "heightened standard of reliability" demanded in capital cases. *Ford v. Wainwright*, 477 U.S. at 411. Though evidence is to be received "regardless of its admissibility under the rules governing admission of evidence at criminal trials," the core of Rule 403 is reflected in the statute's direction that "information may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." 21 U.S.C. § 848(j).

### D.     Judge and Jury

Cognizance must be taken of the distinct roles served by the judge and jury under the ADAA's capital sentencing procedures. "[O]ne of the most important functions any jury can perform" when "exercising its discretion" during capital sentencing is "to maintain a link between contemporary community values and the penal system." *Woodson*, 428 U.S. at 295

(quoting *Witherspoon v. Illinois*, 391 U.S. 510, 519 n.15, 88 S. Ct. 1770, 1776 n.15 (1968)). But jury discretion must be "suitably directed and limited." *Gregg*, 428 U.S. at 189. The jury need not receive complete information about all aspects of a defendant's life. It is entitled to "adequate information," *id.* at195, so long as the evidence does not "prejudice the defendant." *Id.* at 204.

Federal courts bear responsibility for ensuring that trials before them are conducted in conformity with statutory imperatives and the fairness required by the Fifth, Sixth, and Fourteenth Amendments. Because of heightened need for reliability in capital sentencing, *Ford v. Wainwright*, 477 U.S. at 411, the court should be exceptionally careful when considering whether to admit or exclude evidence under the ADAA and Rule 403.

Much Rule 403 precedent declining to exclude is not decisive: the criminal cases generally balance the probative value against unfair prejudice or confusion of the issues in the determination of guilt. *See, e.g., Awadallah*, 436 F.3d at 126; *Old Chief*, 519 U.S. at 175. The decision whether to impose the sentence of death calls for a determination not of whether defendant committed the acts with which he is accused, but whether several carefully defined circumstances have been fulfilled—and, if they have been fulfilled, whether they sufficiently outweigh any mitigating circumstances, much more vaguely defined, to justify execution of the defendant. This judgment is based more on moral sensibilities than upon a determination of facts.

Judges, who are often exposed to the nastier elements of human behavior on a regular basis, are likely to be better able than laypersons to control the effects of prejudicial information on their decisions. *Cf.* Jeffrey J. Rachlinski, et al., Does Unconscious Bias Affect Trial Judges?

28

(2006) (unpublished manuscript, on file with court) (empirical study of implicit associations suggests that judges, while still susceptible to unconscious biases, are able to set them aside when rendering judgment even when primed with information designed to elicit negative reactions).

Moral condemnation by the community is an appropriate basis for punishment. Yet the evidence of abuse in the instant prosecution is offered in support, not of moral condemnation, but of total incapacitation to avoid future dangerous conduct. Under the non-statutory future dangerousness aggravating circumstance alleged by the government, the jury is asked to determine whether defendant "is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others . . . ." Notice 4. It is the court's obligation to ensure that the evidence admitted in support of this valid non-statutory aggravating circumstance will assist, not confuse, the jury in its determination of this delimited question. While the jury bears the ultimate burden of determining whether to sentence defendant to death, the court must assure that deliberations are conducted within the bounds of the ADAA, the rules of federal procedure, and the Constitution.

## V.     Application of Law to Facts

### A.     Generally

Though the court excludes certain aspects of defendant's criminal history, the jury will still hear evidence of other aspects of defendant's criminal history pertinent to this trial. Defendant's instant prosecution is for murder in furtherance of a narcotics trafficking conspiracy. Evidence of defendant's past convictions for narcotics violations are an appropriate aggravating

factor at sentencing. *See* 21 U.S.C. § 848(n)(4) and (10). They have been alleged by the government. These rulings will avoid misleading the jury by suggesting that defendant is generally a peaceful, law-abiding man who committed crimes only in extremis.

The government has proffered sufficient information to support future dangerousness as an aggravating circumstance. *Cf. United States v. Sampson*, (D. Mass. 2004) (court has inherent power to review for sufficiency government evidence in support of aggravating circumstances).

### B.      Sexual Abuse of Minor

Evidence of sexual or physical abuse committed against defendant's minor stepdaughter will not be received. It is relevant to any threat defendant may pose to his family or other minors if he is released; it is irrelevant to any threat he may pose while incarcerated. It is also highly prejudicial, given the recent media attention to sexual assaults against minors in the New York metropolitan area.

While not susceptible of mathematical calculation, probative force is a function of relevance. Evidence that might be highly probative of an issue—e.g., the threat posed to the community by defendant if he is released—may become less pertinent if the underlying factual condition is unlikely to be met—e.g., if it is highly unlikely that defendant will be released from prison during his lifetime.

If convicted and not sentenced to death, defendant is subject to a 20-year minimum sentence on each of the two capital charges. 21 U.S.C. § 848(e). If he were to behave in exemplary fashion during his incarceration, he could receive up to 54 days credit towards the completion of his service each year. *See* 18 U.S.C. § 3624. If he were to receive full credit

possible for each year he was imprisoned, and if the court were to impose the minimum sentence on the two charges to run concurrently, he would serve 17 and a half years. Since the two murders alleged are separated by several years, consecutive sentences might be appropriately imposed, yielding a minimum sentence of 40 years, with credit for time served providing a minimum sentence of 35 years. A Guidelines sentence would be life imprisonment. *See* U.S.S.G. § 2A1.1 and commentary. While not dispositive, the great likelihood that defendant, if convicted and spared death, will spend the rest of his life in prison, does reflect on the relevance of his past abuse of his stepdaughter on his future dangerousness to the community at large.

There is a substantial risk that the admission of this evidence would confuse the jury. The conduct alleged by the government—sexual assault on a minor by a "parent"—is much greater than the conduct to which defendant pled guilty and for which he was deported—endangering the welfare of a child. Section 260.10 of the New York Penal Law provides: "A person is guilty of endangering the welfare of a child when: 1. He knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his life or health . . ." The crime is a class A misdemeanor, subject to a definite term of imprisonment of up to one year. Penal Law § 70.15(1). The conduct sought to be proved by the government would support a much more serious charge, e.g., criminal sexual act in the first degree, Penal Law § 130.50, a class B felony subject to a sentence of 5 to 25 years imprisonment. Penal Law § 70.02(3). Defendant maintains that his relationship with his stepdaughter was consensual and he denies abusing her. Since the government bears the burden

of proving these charges beyond a reasonable doubt, proof would require a diversionary trial within a trial that would have minimal relevance to the future danger posed by defendant to those with whom he is, if convicted, likely to spend the rest of his life—adult guards and male inmates.

More importantly, the evidence would be likely to so inflame the passions of the jurors as to inhibit their careful consideration of the future dangerousness factor. Wide attention to a recent spate of sexual assaults against minors would make it almost impossible for a jury to disconnect its anger at the prevalence of the crimes from the issue of future dangerousness of this defendant. Defendant's contentions that the relationship was consensual would confuse the issues by directing the jury's energies towards divining the nature of the relationship between the two rather than the need to protect society from future crimes of defendant, the basis of the future dangerousness factor. Introduction of this evidence would not produce the heightened reliability required of a capital sentence.

There are circumstances where such evidence of sexual misconduct might be appropriate, even though highly inflammatory. The Federal Death Penalty Act (FDPA), sections 3591 *et seq.* of title 18 of the United States Code, provides a somewhat different list of statutory aggravating factors than the ADAA, *see* 18 U.S.C. § 3592(c)(1) to (16), as well as a similar catch-all provision. *See* 18 U.S.C. § 3592(c) ("The jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists."). One of the FDPA statutory aggravating factors is prior conviction of sexual assault or child molestation, where the case is being prosecuted under a statute forbidding assault in a federal maritime jurisdiction or federal prison, or in connection with the exploitation or trafficking of children. *See* 18 U.S.C. §

3592(c)(15). Defendant is not being prosecuted under these statutes.

Admission in conjunction with a limiting instruction is inappropriate; the evidence is not appropriate for any purpose at issue in the prosecution as framed by the government. *See* Fed. R. Evid. 403 advisory committee notes (1972) ("In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction."); Fed. R. Evid. 105 ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.").

If defendant raises his relationship with his stepdaughter or the needs of her or the child they share as a reason for mitigation, the government may introduce the excluded evidence in rebuttal. *Cf. United States v. Frank*, 11 F. Supp. 2d 314, 321 (S.D.N.Y. 1998) (permitting evidence of recent prior abuse of murder victim at guilt phase of capital trial, but excluding under Rule 403 evidence of more distant incidents of abuse, unless defendant elicited testimony suggesting he "loved [the victim] and never would have harmed her").

### C.     Domestic Abuse of Common Law Wife

Introduction of evidence that defendant physically assaulted his common law wife is appropriate. Though prejudicial, this evidence is not nearly as inflammatory as the allegations of sexual abuse against a minor. Moreover, it explains why the common law wife was present at the scene of the Madrid murder and hesitated to report the event to the police. Abuse that post-

dates the murder of Madrid in October 1995 forms the basis of the obstruction of justice charged in the indictment and is part of defendant's alleged course of conduct during his narcotics trafficking business: distributing narcotics, murdering rivals, and abusing his common law wife to keep her from reporting his activities to the police. It is part of the events surrounding the Madrid murder itself. *Cf. United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997) ("[E]vidence of uncharged criminal activity is not considered 'other crimes' evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." (internal quotations omitted)).

### D.    Domestic Abuse of Former Girlfriend

Evidence of defendant's physical abuse of a former adult girlfriend will be admitted. The evidence is relevant to a determination of defendant's future dangerousness, because the chance of release—while slim—is present. The danger of unfair prejudice does not substantially outweigh the evidence's probative value. It is not likely to prevent the jury from making a rational determination of future dangerousness.

## VI.    Conclusion

Defendant's motion to exclude at the capital sentencing phase evidence of sexual and physical abuse of his stepdaughter is granted. Subject to further in limine motions or challenges

at trial, evidence of physical abuse of his common law wife and former girlfriend will be received at sentencing.

SO ORDERED.

Jack B. Weinstein

Dated: March 16, 2006
      Brooklyn, New York